(No. 20551.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES F. COHEN, Plaintiff in Error.

*Opinion filed February 18, 1931—Rehearing denied April 14, 1931.*

W. W. O'BRIEN, and CLYDE C. FISHER, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE HEARD delivered the opinion of the court:

Plaintiff in error, Charles F. Cohen, otherwise called Sam Goldstein, was convicted in the criminal court of Cook county on an indictment charging that on July 1, 1927, he feloniously, fraudulently and falsely passed as true and

genuine, knowing the same to have been forged, a certain false, forged and counterfeit check in the following words and figures:

"Homer Brothers, Inc. No. 15771.
Manufacturers of High Grade
Dining Room, Bed-room and Parlor Furniture
3053-71 W. Grand Ave. 3042-48 W. Chicago Ave.
Telephones: Nevada 2150-1-2-3-4
CHICAGO, ILL., 6/30, 1927.
"Pay to the order of Charles F. Cohen..............$1840 00/100
The sum of $1840 and oo/Cts.....................dollars
To the West Side Trust & Savings Bank
Roosevelt Road and Halsted Street, Chicago.
HOMER BROS."

It bore on the reverse side thereof the endorsement, "In payment of the following: Refund."

Louis Homer testified for the People that on June 30, 1927, Homer Bros., Inc., was a corporation engaged in furniture manufacturing; that on the date in question witness alone was authorized to sign the checks of the corporation; that the check in question was not signed by him; that as far as he knew no one connected with the company ever had any dealings with the defendant; that about the time the attempt was made to cash the check in question twelve of the blank checks of the corporation had been stolen; that on June 30 their checks were signed "Homer Bros.," and that it then had an account in the bank under that name of $55,000 to $60,000.

Walter H. Corbett testified that on June 30, 1927, defendant came to his window at the West Side Trust and Savings Bank, where witness was paying teller, and presented the check in question, saying, "Cash;" that he asked defendant if he had an account in the bank, and defendant showed him a card, which has been marked as an exhibit; that he asked defendant for time to check the account, and went to notify Frank Johnson, the assistant cashier, and when he returned to the window the assistant cashier and another man were there and took the defendant away.

Frank A. W. Johnson testified: "I know the defendant, Charles F. Cohen. The first time I saw him was June 30 or July 1, 1927, at the bank, where I had a conversation with him about the check, first in the lobby and in a private office. Officer Webber, of the detective bureau, and a half dozen customers, were present. I asked Cohen where he got the check, and he said it's none of my business. Officer Webber then escorted him to the private office and closed the door and he repeated the same answer. He said he got the check for either liquor or whisky—I cannot recall. I said, 'How many cases of liquor was there?' I think he said twenty-four cases of whisky. I turned around and said, 'What did you get this check for and where did you get it?' He said, 'I am not saying everything I know about the check, Mr. Johnson, and you know about it, and you might as well turn me loose right now. I got big people behind me—bigger than your bank. You can't get a conviction against me. They got enough money to buy all the judges in Chicago. This case is a fake and the less I say the less you got on me.' Mr. Rowan asked him a few questions, and he told him he got the check for a load of alcohol. 'You can't get me to change my story. I am not talking.' Sergeant Webber asked the defendant if he had a record, and he said, 'No.' The case was continued several times in Judge Fetzer's court, and after several complaints were filed the judge dismissed the case right in front of the crime commission. I went to see Judge Olson, and then I appeared before the grand jury and the defendant was indicted."

Johnson's version of this conversation is denied specifically by plaintiff in error in his testimony, and Johnson is further contradicted with reference thereto by Webber, who testified for the People that on June 30, 1927, he took defendant into custody at the West Side Trust and Savings Bank; that when first questioned the defendant stated he received the check for twenty-four cases of whisky and

later said he got it for a load of alcohol from a fellow on the street.

It does not appear who Rowan, mentioned by Johnson, was, and he was not called to corroborate Johnson.

Two witnesses who had known plaintiff in error from infancy testified that his general reputation for truth and honesty was good, one of whom testified that about two or three years before the trial plaintiff in error told him he had changed his name to Cohen because he was in the bootlegging business.

Plaintiff in error testified: "My name is Sam Goldstein. Am twenty-four years of age and was born in Chicago. My business is scrap-wire business. I was known under the name of Charles Cohen three years ago when I was in the alcohol business. I got a check for $1840 from George Homer that was presented to the West Side Trust and Savings Bank. I was introduced through Mr. Goldes at Twelfth and Halsted. I did business with him several times before. When he gave me the check for $1840 I gave him seven drums of alcohol. I was supposed to go to the West Side Trust and Savings Bank to cash that check. I was told I would have no trouble in cashing. I never told Mr. Johnson that I had every judge in Chicago fixed. This was impossible talk. I heard Mr. Webber call him Mr. Johnson—that's how I called his name. When I presented this check at the West Side Trust and Savings Bank I did not know it was a forgery. If I had thought it was a forgery I would have never gone there. I have charge of the scrap-wire business now. I was in two lines of business—scrap wire and selling alcohol. I met this man Homer at Goldes'. I had dealings with him several times before I sold him this particular seven-drum load—about the biggest deal we had. About a week before this last deal I sold him a load of alcohol and he paid me $1400 in cash. All the other times he paid me in cash except this particular time. He was about five feet nine and weighed about 180 pounds,

about thirty years of age. I don't know how familiar he was at Goldes'. He probably knew me before I knew him. I can't recall just how many deals in alcohol I had with him—around five. The smallest sale was about $500 and the largest $2500. He did not pay this $2500 in cash. He paid check and cash. The check was signed, 'Homer Bros.' It was presented to me made out for $1840. I refer to this check here. He paid the balance in cash. This alcohol was used for making bootleg whisky. That alcohol costs me money. I closed the deal the day before I was picked up. I did not deliver the alcohol. It was on my truck and delivered by one of the association. This fellow of the association took the check for $1840 and he gave me the money. The alcohol was delivered by somebody else. I do not know where this man Homer lived or know anybody else that knew him. He introduced himself to me at Goldes.' Came up and said, 'Are you Charley Cohen?' and I said, 'Yes.' He said, 'I am George Homer. I understand you are in the alcohol business.' I said, 'How do you know?' and he said, 'I know through certain people.' That is the time we started negotiations. I went right into the West Side Trust and Savings Bank, went up to the window of Mr. Corbett, presented the check and said, 'Cash.' He said, 'Have you got any identification?' I pulled out a card with the Chicago Teamsters, Chauffeurs and Helpers Union. He came back in a little while and next I saw Webber and Johnson. I told them I got the check for a load of alcohol. I was taken into custody and Johnson wanted to know where I received that check. I told him I was talking with a man by the name of George Homer, who had given me the impression that he was one of the Homers from the Homer Furniture Company, stating he had a permit to use alcohol and said they had other business on the side. I didn't tell them they were wasting their time with me; that I had all the judges in Chicago fixed or that I had a lot of big men back of me. After a full hearing Judge Fetzer discharged

me. Later I was indicted, in January, 1928. It wasn't this Mr. Homer here, but I haven't seen all the Homers of Homer Brothers."

Several assignments of error are made, only two of which it is necessary to discuss.. The first error assigned is that the instrument, being signed "Homer Bros.," does not purport to be signed by anyone purporting to have authority to bind the corporation and that it is not such an instrument as could create any liability against the corporation. The evidence shows that the bank account was in the name of "Homer Bros." and that the accredited signature on which money could be drawn therefrom was "Homer Bros." The signature to this check was in the regular form used by the corporation on its valid checks. Plaintiff in error's point is therefore not well taken.

The other assignment of error is that the evidence is not sufficient to show defendant's guilt, beyond a reasonable doubt, of the crime with which he is charged. It is not sufficient to warrant a conviction of the crime with which plaintiff in error was charged to show merely that he uttered, published or passed as true and genuine a forged check, but under the statute it is also necessary to prove, beyond a reasonable doubt, that he uttered, published and passed such check "knowing the same to be false, altered, forged or counterfeited." There is no evidence in this case that the George Homer mentioned by plaintiff in error in his testimony was not one of the Homer brothers whose name was used in the title of the corporation and that he was not connected with the corporation. In making the check one of the corporation's genuine blank checks was used. The forged signature thereto was evidently made by a person familiar with the corporation method of signing its checks, as the signature, "Homer Bros.," without any addition thereto, was not a usual method used by corporations in signing their checks. Plaintiff in error presented the check in person, and when asked for identification presented his

own card as a member of the Chicago Teamsters, Chauffeurs and Helpers Union. When at liberty he made no attempt to flee. In view of the evidence in the record we are of the opinion that there should be another trial of the cause.

The judgment of the criminal court of Cook county is reversed and the cause remanded to that court.

*Reversed and remanded.*