(No. 24473.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ARTHUR L. WHITMER, Plaintiff in Error.

*Opinion filed June 15, 1938—Rehearing denied October 5, 1938.*

Shaw, C. J., took no part.

Lee D. Mathias, (Wm. Scott Stewart, of counsel, on rehearing,) for plaintiff in error.

Otto Kerner, Attorney General, Thomas J. Courtney, State's Attorney, and A. B. Dennis, (Edward E. Wilson, John T. Gallagher, Melvin S. Rembe, Blair L. Varnes, and Leslie V. Curtis, of counsel,) for the People.

Mr. Justice Orr delivered the opinion of the court:

We are asked by this writ of error to review the judgment of the criminal court of Cook county, wherein a jury found Arthur L. Whitmer guilty of the crime of forgery. He was tried on the fourth count of an indictment charging him with falsely uttering, publishing and passing as true and genuine a forged note purported to have been made by Charles Wilkins. The note for $5000 was dated November 11, 1931, due ninety days after date, payable to the order of Illinois National Underwriters Company and bore the signature, "Chas. Wilkins." On the reverse side of the note was endorsed this legend, "Illinois National Underwriters Co. By: A. L. Whitmer C.O.B. By: L. R. Cotter Asst. Sec'y."

The Illinois National Underwriters Company, with its main office in Chicago, was indebted, in 1931, to the Kaspar-

American State Bank.. The indebtedness was secured by collateral in the form of promissory notes due the company. By agreement, pledged notes, as their maturity dates approached, were taken from the bank by the company and other notes in equal, or greater amounts, were substituted as collateral with the bank. Defendant was chairman of the board of the company and he endorsed the notes, including the one above mentioned, to be used as collateral before they were taken to the bank. Charles Wilkins, (Chas. Wilkins) was a close friend of the defendant and was financially interested in the company. About thirty days before the trial, the People were required to furnish the defendant with a bill of particulars. Among other things, this bill recited the People would introduce evidence to establish that defendant, knowing at the time the note was forged, "endorsed said note and caused the same to be published and uttered as true and genuine;" etc. Defendant made repeated but unsuccessful efforts during the course of the trial to secure the dismissal of the charge against him on the ground a fatal variance existed between the charge of the indictment and the proof upon which the People relied to convict him. The trial court's rulings in this regard are alleged as erroneous, because the indictment charged him with uttering and passing the alleged forged note, whereas the People said, by their bill of particulars, that they would prove he *caused* the note to be uttered and passed. Reference is made to the Forgery statute (section 105, Criminal Code; Ill. Rev. Stat. 1937, chap. 38, par. 277;) with the claim that causing the alleged forged note to be uttered and passed is a separate and distinct crime from uttering and passing a forged instrument.

In *People* v. *Vammar,* 320 Ill. 287, we said the making of a forged instrument and passing it as a genuine instrument are two separate and distinct felonies; proof of one not being sufficient to sustain a conviction on the other. *People* v. *Dunham,* 344 Ill. 268, was a case where the de-

fendant was convicted of attempting to pass a forged instrument; that was the specific charge he was indicted and tried for, and this court sustained the judgment. The *Dunham case* was brought to the attention of the court in *People v. Katz,* 356 Ill. 440, and we said therein that the *Dunham case* showed the passing of a forged instrument was a separate crime from attempting to pass it. It does not follow from these cases, however, that the passing and uttering of a forged note is a separate crime from that of causing such an instrument to be uttered and passed. Both involve a completed crime of the same magnitude—not an attempt to commit such a crime, as was charged in the *Dunham case.* Where forgery is charged, the question whether a defendant has done the act himself or caused it to be done by others is important only in determining the method used and the persons involved in accomplishing the same unlawful act. The crime in either case is the same. Thus the analogy which defendant seeks to make between the separate crime of attempting to pass a forged instrument, as in the *Dunham case,* and causing a forged instrument to be uttered and passed, as in the present case, must fail. The use of third parties in causing a forgery to be committed does not relieve the motivating principal of guilt or constitute a separate offense. Where one uses an innocent agent to commit a crime, he is guilty though not the actual perpetrator. (*People v. Mutchler,* 309 Ill. 207.) Where one causes or procures the commission of forgery through an innocent third party, he is guilty as if he had done the act himself. *Gregory v. State,* 26 Ohio St. 510; *Commonwealth v. Hill,* 11 Mass. 136; *Langdon v. People,* 133 Ill. 382.

In their controversy over the effect of the language in the bill of particulars, both the People and defendant cite the case of *People v. Depew,* 237 Ill. 574, which involved a prosecution under the Confidence Game statute. A bill of particulars was there furnished and it was argued that the facts stated in the bill and established by the evidence did

not constitute a confidence game. We there held that the indictment, and not the bill of particulars, was the charge the defendant must face. The object of the bill of particulars is only to notify the accused of the specific charge against him, and to acquaint him with the particular transactions on which the People will rely, all for the purpose of enabling him adequately to defend himself. Its effect is to limit the People, in the matter of evidence introduced, to the transactions set out in the bill. (*People* v. *Parker,* 355 Ill. 258; *People* v. *Ervin,* 342 id. 421.) The bill of particulars in the present case did not require the People to prove a crime different from the one charged in the indictment. The indictment charged defendant with falsely uttering, publishing and passing, as true and genuine, a forged note. The People were obliged to prove that defendant uttered, published and passed a forged instrument, either with or without the aid of others. The bill of particulars had to be specific enough to state the means by which the People expected to prove defendant guilty of forgery. As defendant did not actually do the physical uttering and passing, the People had to tell him in the bill how it would attempt to fasten the charge upon him. The bill of particulars, as worded, was of aid to defendant, for after its filing he was not at a loss in preparing his own defense to show, if he could, that he did not make use of innocent third persons to utter and pass the instrument. The trial court did not err in refusing to grant defendant's various motions based upon an alleged fatal variance between the indictment and the bill of particulars.

The indictment had indorsed upon the back thereof the names of certain witnesses who appeared before the grand jury, among which was the name "Charles Wilkins." The Charles Wilkins who testified at the trial, and whose name was allegedly forged to the note, did not testify before the grand jury. It is difficult to see how defendant was injured by this fact, for the only object of placing names on

the back of an indictment, or of furnishing defendant with such names, is to give him an opportunity to interview the witnesses who appeared before the grand jury and afford him an opportunity to find out what they knew about the charge preferred against him. By his own testimony defendant showed he was well acquainted with the Charles Wilkins whose name, it is alleged, he knew was forged on the note. He had known him well for fourteen years; their business relations had been intimate and he had written Wilkins a letter, asking him to sign certain stock certificates, so defendant would not have to appear in court as the owner thereof. The Wilkins who testified at the trial emphatically stated the signature to the alleged forged note, purporting to be his, was not, in fact, his, for he had not signed the note. Defendant testified the signature in dispute was the genuine signature of Charles Wilkins, the witness at the trial. He went to the extent of trying to substantiate his testimony by introducing in evidence certain handwriting exhibits. The fact the Charles Wilkins, who testified at the trial, did not appear as a witness before the grand jury as the indorsement on the indictment indicated, does not render the indictment bad, nor did it harm defendant in any way, particularly from the standpoint of embarrassing him in the preparation of his defense or by catching him unaware. The name "Charles Wilkins," on the indictment, undoubtedly referred to the Charles Wilkins who testified at the trial, but who, for some undisclosed reason, did not testify before the grand jury. It will not be presumed there was no competent evidence before the grand jury on which to return an indictment, just because the prosecuting witness did not testify before that body. (*People* v. *Duncan,* 261 Ill. 339.) Error was not committed in refusing to strike out all the evidence for the People, and particularly that of Charles Wilkins, nor in denying defendant's motion to require the People to furnish him with the

address of the Charles Wilkins who had testified before the grand jury.

The People's evidence, in substance, showed beyond all reasonable doubt that defendant ordered the note made, saying at the time he had a friend who would sign it, or who would come to the aid of the company when it was short of notes. The note was typed by his order so he could have it signed and used as collateral. "Chas. Wilkins," as the maker of the note, appeared thereon when it was returned to the company employee for transmittal to the bank as replacement collateral. From the time the typed, unsigned note was given to defendant until he returned it, the instrument was in his exclusive possession and control. He, alone, knew how the signature, "Chas. Wilkins" became affixed to the note. By way of defense he contended that the note did bear the genuine signature of Charles Wilkins and therefore was not a forged instrument. By his own testimony he sought to establish this signature, on the basis of his knowledge of the handwriting of Wilkins. He went even further and introduced in evidence samples of what he said were the genuine signatures of Wilkins appearing upon other instruments in his possession. Originally these comparison signatures were the genuine signatures of Wilkins. Before their introduction in evidence, however, each signature had been altered to conform to the type of signature attached to the allegedly forged note. The original comparison signatures were written, "C. L. Wilkins," while they appeared in court, for comparison purposes, as "Chas. Wilkins." A handwriting expert for the People showed beyond all doubt that the original signatures had been changed by altering the initial "L" into an "h" and adding thereto the two letters, "as," thus making "Chas." This same witness showed how this alteration had been accomplished, first by making a lead pencil tracing of the proposed change and then inking it over. Some of the tracing

was not covered by the ink, as the person performing the act failed accurately to following the tracings. The evidence established that defendant made use of employees immediately under him and subject to his direct orders, who looked after the company's note files, wherein were kept notes used as replacement collateral with the bank. He would be notified of impending due dates of notes placed with the bank as collateral and would order the withdrawal of those notes and the substitution of others in their stead. Bank officials testified that they conferred with defendant when the bank was unable to secure payment of company notes, asking him for addresses of makers in order to obtain payment. Defendant promised to furnished the needed addresses and did so with the exception of Wilkins and one Peterson. The evidence produced by the People proved that the employees of the insurance company under the direction and control of defendant, were innocent agents and acted under his direction in typing the note and later receiving it from him with the signature, "Chas. Wilkins" affixed. They only followed his direction in delivering the note to the company messenger to be taken to the bank. None of them possessed guilty knowledge that the note was forged and none had the intent to work a fraud on the bank. The People were able to show the company to be in hard financial straits at the time, so much so, in fact, that defendant endeavored to procure a government loan for the company.

We have carefully examined other alleged errors of the trial court in admitting or rejecting certain testimony, in refusing to quash the fourth count of the indictment and in giving or refusing to give certain instructions, but find no harmful error in any of the instances complained of. This court has often emphasized its reluctance to lengthen its opinions with tedious consideration of numerous lesser points raised in the briefs. The record here appears to be free from substantial error and the instructions given, when considered as a series, correctly presented to the jury the

law applicable to the facts in evidence. Error was not committed when the trial court refused to grant motions of defendant made at the close of the case for the People and at the close of all the evidence, to instruct the jury to return a verdict of not guilty. *People* v. *Cohen,* 343 Ill. 437, and *People* v. *Ciralsky,* 360 id. 554, cited by defendant, are not in point on account of the difference in the amount of proof for the People in those cases and in the present case. The verdict of the jury and the judgment of the court were firmly founded on ample and convincing evidence.

The judgment is affirmed.   *Judgment affirmed.*

Mr. CHIEF JUSTICE SHAW took no part in this decision.