298 So.2d 505 (1974)
STATE of Florida, Appellant,
v.
Clifford VINSON, Appellee.
No. 73-1070.
District Court of Appeal of Florida, Second District.
July 19, 1974.
Rehearing Denied September 4, 1974.
*506 Joseph P. D'Alessandro, State Atty., Louis S. St. Laurent, Chief Asst. State Atty., E.G. Couse and James Thompson, Asst. State Attys., Fort Myers, for appellant.
Robert E. Pyle, Lake Alfred, and Frank C. Alderman, III, Alderman, Hendry & Wallace, Fort Myers, for appellee.
GRIMES, Judge.
The state appeals the dismissal of a two count information charging appellee with the commission of third degree felonies. The first count charged that appellee
"did unlawfully deliver a controlled substance named or described in Section 893.03(2)(c), to-wit: Dexadrine, to TONY HORVATH, by use of a written order for said drug not issued in good faith and in the course of his professional practice."
The second count was worded the same except that appellee was charged with delivering a different drug to another person.
Since the information did not state that appellee was a doctor, the state originally objected to any consideration of this fact for the purposes of passing on the legal sufficiency of the information. However, the state now concedes and the parties agree that appellee was a doctor at the time he was charged with these offenses, and that this fact was considered by the trial court and may be considered in this appeal as if it were specifically stated in the information.
In 1973, the Legislature enacted Chapter 893 known as the Florida Comprehensive Drug Abuse Prevention and Control Act. § 893.13(1)(a), F.S.A., states in part:
"Except as authorized by this chapter and chapter 500, it is unlawful for any person to sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance... ."
At the outset, a physician is among those defined as a practitioner under Section 893.02, and Section 893.05(1) provides that:
"A practitioner, in good faith and in the course of his professional practice *507 only, may prescribe, administer, dispense, mix or otherwise prepare a controlled substance, ..."
Obviously, a doctor can prescribe a drug which falls within the definition of a controlled substance for the proper treatment of a patient. By the language of the information, the state has negated this exemption by stating that the drug was delivered by use of a written order "not issued in good faith and in the course of his professional practice." Hence, the issue in this case centers upon the question of what constitutes a delivery.
The word delivery is defined in § 893.02(4) as follows:
"`Deliver' or `delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship."
The appellee successfully contended below that the writing of a prescription by a doctor could not constitute a delivery as set forth in the statute.
In the preamble to Chapter 893, reference was made to the desirability of having Florida drug laws uniform with the current Federal Comprehensive Drug Abuse Prevention and Control Act of 1970. While substantial portions of the federal act were incorporated into Chapter 893, the act was not adopted in its entirety. Additional material, possibly influenced by preexisting Florida drug laws, was also included in the chapter. Consequently, a study of the legislative history of this act does not provide us with a ready answer to the question posed in this appeal.
Chapter 893 is not a model of clarity. The question is whether its language may be reasonably construed to provide that the prescribing of a drug constitutes delivery when it is contemplated that the actual transfer of the drug will be made by a pharmacist pursuant to the authority of the prescription. We hold that it may. We believe that the issuing of a prescription under these circumstances does constitute a delivery within the meaning of the Florida Comprehensive Drug Abuse Prevention and Control Act.
The word "constructive" as included within the definition of delivery lends support to our conclusion. The word is defined in Black's Law Dictionary to mean:
"That which is established by the mind of the law in its act of construing facts, conduct, circumstances, or instruments; that which has not the character assigned to it in its own essential nature, but acquires such character in consequence of the way in which it is regarded by a rule or policy of law; hence, inferred, implied, made out by legal interpretation; ..."
The sufficiency of constructive delivery has arisen in varying contexts in connection with determining whether a valid gift has been made. See 15 Fla.Jur., Gifts, § 15. One is said to have constructive possession of a chattel where he has the ability to maintain control over it or reduce it to his physical possession even though he does not have actual personal dominion. Spataro v. State, Fla.App. 1965, 179 So.2d 873. Thus, it seems reasonable to assume that by including the words "actual or constructive" within its definition of delivery, the Legislature intended to encompass a situation where a doctor, by reason of his right to issue prescriptions, does so in bad faith and thereby provides a user with the vehicle with which to obtain the drug he could not otherwise acquire.
We are also influenced by the analogy which may be drawn with reference to those cases in which one who caused a crime to be committed by an innocent agent has been deemed guilty of the crime as a principal. In Pereira v. United States, CA 5, 1953, 202 F.2d 830, fraudulently obtained checks were transferred through banking channels and hence mailed in interstate commerce. Convictions for causing *508 fraudulently obtained securities to be transferred in interstate commerce were upheld over the objection that the actual transfers were made through the innocent agencies of a bank and a post office. In People v. Pounds, Cal. App. 1959, 168 Cal. App.2d 756, 336 P.2d 219, an innocent person endorsed and cashed a check for the defendant and gave him the money. The defendant had already forged the payee's signature. The defendant was convicted of uttering and passing a forged instrument through the innocent agency of a third party. The court in Fritz v. State, 1964, 25 Wis.2d 91, 130 N.W.2d 279, applied an aiding, abetting and procuring statute[1] to uphold the legality of a conviction of a woman who had procured her legally incompetent lover to kill her husband. See also Boushea v. United States, CA 8, 1949, 173 F.2d 131; Workman v. State, Ind. 1939, 216 Ind. 68, 21 N.E.2d 712, 23 N.E.2d 419; People v. Whitmer, 1938, 369 Ill. 317, 16 N.E.2d 757; People v. Jack, Cal. App. 1965, 233 Cal. App.2d 446, 43 Cal. Rptr. 566.
Finally, certain cases construing the federal drug law which predated the 1970 act also shed light on the subject. In Jin Fuey Moy v. United States, 1920, 254 U.S. 189, 41 S.Ct. 98, 65 L.Ed. 214, the U.S. Supreme Court construed the sufficiency of an indictment which charged that a physician "did ... feloniously sell, barter, exchange and give away" certain drugs by issuing a prescription to a patient not in the course of his professional practice. The court upheld the indictment in the following words:
"It is objected that the act of selling or giving away a drug and the act of issuing a prescription are so essentially different that to allege that defendant sold the drug by issuing a prescription for it amounts to a contradiction of terms, and the repugnance renders the indictment fatally defective. The government suggests that the clause as to issuing the prescription may be rejected as surplusage; but we are inclined to think it enters so intimately into the description of the offense intended to be charged that it cannot be eliminated, and that unless defendant could `sell,' in a criminal sense, by issuing a prescription, the indictment is bad. If `selling' must be confined to a parting with one's own property, there might be difficulty. But by § 332 of the Criminal Code [35 Stat. at L. 1152, chap. 321, Comp.Stat. § 10,506, 7 Fed.Stat.Anno. 2d ed. p. 984], `Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal.' Taking this together with the clauses quoted from § 2 of the Anti-Narcotic Act, it is easy to see, and the evidence in this case demonstrates, that one may take a principal part in a prohibited sale of an opium derivative belonging to another person by unlawfully issuing a prescription to the would-be purchaser. Hence there is no necessary repugnance between prescribing and selling, and the indictment must be sustained."
A doctor's contention that he could not be convicted of the illegal sale of drugs when all he did was to write prescriptions was squarely rejected in United States v. Bloom, CA 2, 1947, 164 F.2d 556.
In United States v. Abdallah, CA 2, 1945, 149 F.2d 219, the evidence was contradictory concerning whether the druggist filled the prescriptions according to the directions contained therein which required the addition of some non-narcotic substances *509 or whether the druggist gave the customer the drug in its pure form. The court recognized that the filling of the prescription was a necessary element of the sale of the drug but said that as long as the acquisition of the drug was as a result of the prescription it didn't matter that the druggist precisely followed the directions set forth therein. The court said that in either event, the prescription was the instrument leading to the completion of the crime. The court also observed:
"... [T]he crucial act was committed once the prescriptions were issued. The filling of the prescriptions merely carries the act to the final point where it becomes punishable as the crime in question. Thus the administering of poison may not constitute murder until the victim perishes; but once this occurs, the act of administering constitutes the offense... ."
This raises the question of whether it would be necessary for the prescription to be filled in the instant case before the felony could be committed. Ordinarily it would, because the word "delivery" refers to the transfer of the drug rather than the transfer of the prescription. Therefore, one who issues such a prescription which is never filled would have only committed an attempt which, under normal circumstances, would be punishable under § 776.04, F.S.A.[2] However, that statute, by its terms, only applies "when no express provision is made by law for the punishment" of an attempt. In Chapter 893, delivery is defined as the "actual, constructive or attempted transfer." Therefore, one who attempts to make the transfer is guilty of the substantive offense even though the transfer is not successful. The physician who has issued a prescription for a drug in bad faith and not in the course of his professional practice has done everything he can do toward committing the crime. Because of the definition of delivery, he is just as guilty where the transfer of the drug never takes place as where it does.
The order dismissing the information is reversed.
HOBSON, Acting C.J., and BOARDMAN, J., concur.
NOTES
[1] Florida's statute covering the procuring of a crime to be committed reads as follows:

"Principal in first degree.  Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, is a principal in the first degree and may be charged, convicted and punished as such, whether he is or is not actually or constructively present at the commission of such offense." Fla. Stat. § 776.011.
[2] "Attempts, generally.  Whoever attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such an offense, but fails in the perpetration, or is intercepted or prevented in the execution of the same, shall, when no express provision is made by law for the punishment of such attempt, be punished as follows: ..." Fla. Stat. § 776.04.