MAY, J.
The dangers of prescription drug abuse and the State’s efforts to curb the improper prescription of these drugs form the framework for this appeal. The defendant appeals his conviction and sentence for one count of trafficking in a Schedule II drug over 28 grams, one count of trafficking of a Schedule II drug over 4 grams but less than 14 grams, five counts of delivery of a Schedule IV drug, one count of racketeering, two counts of Medicaid fraud, one count of insurance fraud, and one count of a fraudulent insurance claim. He raises several arguments; we affirm on all issues but one. We reverse his conviction on the count for trafficking of a Schedule II drug over 28 grams, but affirm in all other respects.
In February 2001, one of the defendant’s patients died from a drug overdose. The patient’s death brought law enforcement’s attention to the defendant, Denis Deona-rine, M.D. Law enforcement reviewed various pharmacy records, patients’ medical histories, Medicaid records, and interviewed numerous individuals. During the investigation, a senior investigator from the Office of the Attorney General posed as a patient and sought treatment from the defendant. He secretly recorded conversations within the defendant’s office.
Based upon affidavits of that investigator, an investigator of the Palm Beach County State Attorney’s Office, and a special agent of the Food and Drug Administration’s Office of Criminal Investigations, the court issued a search warrant for the defendant’s medical office. Law enforcement executed the warrant and created a nineteen-page inventory of items seized.
In its Second Amended Information, the State charged the defendant with five counts of Medicaid fraud, one count of insurance fraud, and one count of a false and fraudulent insurance claim. (Case number 01CF005383B02 [5383], covering events occurring between January and April 2001). Based upon a grand jury’s second re-filed indictment, the State charged the defendant with eighty offenses, including one count of first degree murder, one count of racketeering, fifty-three counts of trafficking of a Schedule II drug (oxycodone), and twenty-five counts of sale/delivery of Schedule IV drugs (dia-zepam/alprazolam). (Case number 01CF008126A02 [8126], covering events between September 1999 and April 2001). The trial court consolidated the cases as *335 the result of an agreed-upon motion. Subsequently, the trial court severed the counts of insurance fraud and the false and fraudulent insurance claim based upon a defense motion.[1]
The defendant moved to suppress the evidence seized from his office, claiming the warrant was insufficient on its face, and that the affidavit failed to establish probable cause. He argued that law enforcement intentionally and recklessly obscured the lack of probable cause from the court. He also claimed the warrant was overbroad.
At the hearing on the motion to suppress, the State presented testimony from two of the investigators. The witnesses were able to detail the source of the information contained in the affidavit, but admitted to some omissions and inaccurate paraphrasing. The trial court ruled:
With the exception of the fact that there being other evidence, for whatever reason, was not included because it was superfluous, because it was irrelevant or was just extraneous to the real issues of probable cause.... And uh, and the only other issue is that the, the factual issues presented by the witnesses are such that the Court finds that the, the witnesses before the Court are honest, straightforward, and that if there was any important evidence that was not included in the, in the Affidavit which supported the search warrant, it would not have made any difference in the Court’s view to the ultimate outcome of the determination of probable cause, and accordingly the defendant’s motion is denied.

I, THE TRAFFICKING COUNTS

At trial, the State entered the defendant’s medical records for numerous patients as well as the testimony of several of them; however, the trafficking charges related only to Patient #1.. When Patient # 1 first met the defendant, she was homeless, staying with friends, and on Medicaid. She wanted stronger medication for pain; her friend gave her one of the defendant’s business cards. She hoped to get a prescription for OxyContin.
Her initial visit was on January 10, 2001. At that time, the defendant prescribed sixty 80 mg- tablets of OxyContin, Roxyeo-done, and Halcion. She recalled that the defendant did not review her general medical history, but relied on the MRI report she brought with her. The defendant did not inquire about her limitations in activity, and did not discuss alternatives to pain medication. During the examination, she disclosed her personal problems and the fact she was homeless. Before she left, the defendant asked her to dinner.
Sixteen days later, the defendant severed the doctor-patient relationship with Patient # 1, but Continued to prescribe opiates for her. The defendant then employed her to work in his office and bought her a 2000 Jaguar. Several weeks later, they went to Jamaica on vacation.
The defendant wrote prescriptions for her regularly. Between Febrüary and May 2.001, the defendant increased her OxyContin prescription from one pill every twelve hours to two pills three times a day.
On several occasions the defendant accompanied her to the pharmacy to fill them. He was aware that she was using multiple pharmacies to fill the prescriptions, and that both her health insurance through her employment with him and *336 Medicaid paid for them. She knew that Medicaid coverage was no longer valid once she acquired health insurance.

A. Count #12

The State’s evidence against the defendant on Count 12 for trafficking of a Schedule II drug in an amount of 28 grams or more centered on two different sets of prescriptions written for Patient #1. In one set, the State introduced a print-out of Patient # l’s profile from Walgreen’s pharmacy, focusing on the prescriptions for Oxycodone, OxyContin, and OxylR, prescribed by the defendant and filled by the pharmacy, between January 29, 2001, and March 31, 2001. The total weight of active ingredient was 38.37 grams.
As the second set, the State also introduced seven of ten written prescriptions and a pill bottle containing OxyContin that were seized from Patient # l’s purse during the search of the defendant’s office. The total weight of Oxycodone from the seven written prescriptions was 21.45 grams while the pill bottle constituted the balance for the offense.

B. Count #15

The State’s evidence supporting the trafficking in Schedule II drugs in an amount between 4 and 14 grams (Count 15) consisted of proof that Patient # 1 presented two prescriptions at Eckerd Pharmacy on February 21, 2001. The pharmacist on duty that day testified that one of the prescriptions raised suspicion. The defendant was present at the counter and discussed the prescription with the pharmacist, but could not produce his credentials. Not only was the pharmacist dissatisfied with the defendant’s verification of his identity, she did not have a sufficient stock of OxyContin to fill the prescriptions. The pharmacist returned both prescriptions unfilled.

II. THE DEFENDANT’S MOTIONS FOR JUDGMENT OF ACQUITTAL

At the close of the State’s case-in-chief, the defendant moved for a judgment of acquittal and argued the State failed to prove that he unlawfully sold, delivered, or possessed with the intent to sell or deliver any controlled substances. The trial court denied the motion. At the close of all the evidence, the defendant renewed his motion for judgment of acquittal. The trial court denied the renewed motion.
The jury found the defendant guilty of ten counts: one count of trafficking over 28 grams of a Schedule II drug (count 12), one count of trafficking of a Schedule II drug over 4 grams but less than 14 grams (count 15), five counts of delivery of a Schedule IV drug, one count of racketeering, and two counts of Medicaid fraud.
The defendant renewed his motion for judgment of acquittal. The defendant argued there was no proof of the weight of the drugs involved on Counts 12 and 15, the trafficking counts. For the first time, he argued the State could not combine multiple transactions to give rise to the level of trafficking in Count 12.[2] Along with his renewed motion for judgment of acquittal, the defendant moved for new trial, making the same arguments. The trial court heard both motions and denied them.
The trial court adjudicated the defendant guilty and sentenced him to 25 years imprisonment with a mandatory minimum of 25 years on the major trafficking count; *337 150 months (12.5 years), mandatory minimum three years, on the minor trafficking count; five years on each delivery count; 150 months (12.5 years) on the racketeering count; and five years on each Medicaid fraud count. All sentences ran concurrently.

III. THE APPEAL

The defendant raised numerous issues on appeal. We "write to address the convictions on the two trafficking counts and the racketeering count. We find no merit in the other issues raised.
The defendant argues the trial court erred when it denied his motions for judgment of acquittal because there was insufficient evidence to support a conviction on any of the counts. He claims there was insufficient evidence of drug weight to support the trafficking counts and that it is impermissible to add the prescriptions together to reach the requisite weight. The gravamen of the defendant’s position is that the State cannot combine the drug weights from multiple prescriptions, written at different times, to create an aggregate weight to support the trafficking charges.
A motion for judgment of acquittal challenges the legal sufficiency of the State’s evidence. Boyce v. State, 638 So.2d 98, 99 (Fla. 4th DCA 1994). We review motions for judgment of acquittal de novo. “In moving for a judgment of acquittal, a defendant admits all the facts and evidence adduced at trial, as well as every conclusion favorable to the State that a jury might fairly and reasonably infer therefrom.” Id. (citing Peacock v. State, 498 So.2d 545, 546 (Fla. 1st DCA 1986)).
In State v. Vinson, 298 So.2d 505, 507 (Fla. 2d DCA 1974), the Second District Court of Appeal recognized that in enacting its drug laws, “the Legislature intended to encompass a situation where a doctor, by reason of his right to issue prescriptions, does so in bad faith and thereby provides a user with the vehicle with which to obtain the drug he could not otherwise acquire.” It is the act of prescribing the controlled substance in bad faith that subjects the physician to criminal prosecution. Id. This is so regardless of whether the prescription is filled. Thus, “[t]he physician who has issued a prescription for a drug in bad faith and not in the course of his professional practice has done everything he can do toward committing the crime.” Id. at 509.
Since that time, our supreme court has dealt with the nuances of applying the trafficking statute. In State v. Weeks, 335 So.2d 274 (Fla.1976), the court held that the trafficking statute was not unconstitutionally vague as applied to a physician. In Hayes v. State, 750 So.2d 1 (Fla.1999), the court held that the ability to consider the weight of a “mixture” for purposes of the trafficking statute is restricted to Schedule I and II drugs and does not apply a drug that can be classified as either a schedule II or III drug.
In State v. Travis, 808 So.2d 194, 196 (Fla.2002), the supreme court held that the total weight of a Schedule II drug could be multiplied by the number of tablets to determine whether the amount met the threshold under the trafficking statute. In doing so, the court noted that “nothing in this section prohibits aggregating the number of tablets possessed by the defendant in order to meet the threshold amount for drug trafficking.” Id.
What no Florida court appears to have addressed is whether the State can convict a physician for trafficking by aggregating the amounts in multiple prescriptions written by the physician. However, one Florida decision and one from outside the state shed light on the subject.
*338 The Court of Criminal Appeals of Alabama wrestled with the issue outside the medical context in Townsend, v. State, 823 So.2d 717 (Ala.Crim.App.2001). It was faced with a defendant charged with trafficking based upon the aggregation of two separate stashes of the drug. Id. at 719. The defendant argued he should have been charged with multiple counts of possession instead of a single charge of trafficking. Id. After reviewing the applicable statutory language and the law on double jeopardy as it applied to the facts, the court found no prohibition to aggregating separate amounts of drugs for purposes of the trafficking statute. In doing so, however, the court acknowledged that whether smaller amounts of drugs could be aggregated to increase the charge and penalty depended on the circumstances of the case. Id. at 724.
This court held in Davey v. State, 914 So.2d 529, 530 (Fla. 4th DCA 2005), that it is the “spatial and temporal aspects of the surrounding circumstances” that determine whether separate amounts of a drug can support separate charges or run afoul of a double jeopardy challenge. What we must decide is whether the “spatial and temporal aspects of the surrounding circumstances” are close enough in time to support the aggregation of the prescribed amounts of drugs to support a trafficking charge. In essence, the issue here is the polar opposite of that found in double jeopardy challenges.
First, we conclude, as did the Court of Criminal Appeals of Alabama, that our statutory language does not prohibit the aggregation of amounts of drugs to support a trafficking charge. Second, we con-elude that the “spatial and temporal time” between the writing of prescriptions is a viable means by which to determine if the defendant had sufficient time to form a new criminal .intent thereby committing separate crimes.
Given these parameters, we find the facts giving rise to Count 12 do not allow for the aggregation of the amounts of the prescribed controlled substances to support the defendant’s conviction for trafficking. Here, the State relied upon prescriptions issued over a three-month period of time, from January 29 to March 31, 2001, to support Count 12. These prescriptions occurred over a significant “spatial and temporal time” that allowed the defendant “to pause, reflect, and form a new criminal intent between the occurrences.” Id. We therefore reverse the defendant’s conviction on Count 12 and remand the case to the trial court for entry of the lesser included charge of delivery.
As to Count 15, however, the State relied upon two prescriptions presented by Patient # 1 to the Eckerd Pharmacy on February 21, 2001. The defendant was present at the time the prescriptions were presented. In fact, he attempted to intercede when the pharmacist questioned Patient # 1 about filling the two prescriptions at the same time. We find this evidence sufficient to support the defendant’s conviction on this count.[3]
Lastly, the defendant suggests the State failed to establish that the alleged trafficking activity was conducted as part of a continuing course of conduct through an enterprise. He argues that his multiple violations of chapter 893 do not constitute *339 racketeering as defined by section 895.02, Florida Statutes (2001). The State responds that the defendant’s medical practice satisfied the statutory definition of an enterprise and that his multiple convictions for delivery and trafficking satisfied the statute’s requirement of “racketeering.” We agree with the State.
Section 895.03(3), Florida Statutes (2001) provides: “It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt.” An enterprise is defined as “any individual, sole proprietorship, ... corporation, ... or other legal entity, or ... group of individuals associated in fact although not a legal entity; and it includes illicit as well as licit enterprises and governmental, as well as other, entities.” § 895.02(3). We find that the defendant’s medical practice is equivalent to the law firm found to constitute an enterprise in State v. Jackson, 677 So.2d 938 (Fla. 2d DCA 1996). The multiple convictions of delivery, the trafficking charge, and the two counts of Medicaid fraud were more than sufficient to satisfy the racketeering element of the statute.
For these reasons, we reverse the defendant’s conviction on Count 12, and remand the case to allow entry of a lesser included crime of delivery. We affirm in all other respects.

Affirmed in part and reversed in part.

GUNTHER and GROSS, JJ., concur.

. Reserving his right to appeal the validity of the search, the defendant pled nolo contendere to one count of insurance fraud and one count of a false and fraudulent insurance claim.

. While the renewed motion for judgment of acquittal raised this issue as it related to Count 12 only, the defendant has raised this issue as it relates to both Counts 12 and 15 on appeal.

. The defendant also argues the State failed to prove that the prescriptions for Patient # 1 were not written in good faith. We disagree. There was competent, substantial evidence that Patient # 1 ceased being a patient, and yet the defendant continued to prescribe large doses of opiates for her. This is sufficient evidence that the physician did not prescribe the drugs in “good faith.” State v. Weeks, 335 So.2d 274, 277 (Fla.1976).