(No. 14133.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN MASON, Plaintiff in Error.

*Opinion filed December 22, 1921—Rehearing denied Feb. 9, 1922.*

1. CRIMINAL LAW—*the court may refuse to require election of counts before taking proof.* The matter of requiring the State to elect on which overt act the prosecution will stand and the time at which such election shall be made rests in the sound discretion of the trial court, and in a prosecution under counts charging the taking of indecent liberties and an attempt to commit statutory rape it is not error to refuse to require the election by the prosecution before the taking of proof.

2. SAME—*proof of acts of lewdness is admissible in prosecution for attempt to commit·rape.* In a prosecution for an attempt to commit rape on a child under the age of consent, proof of the defendant's acts of lewdness with the prosecuting witness showing a course of conduct leading up to the assault is competent for that purpose whether the assault was with or without force.

3. SAME—*statutory rape is not changed to common law crime merely because the act was with force.* Statutory rape or the attempt to commit such offense on a child under the age of consent is not changed to the common law crime merely because the assault was with force and against the will of the child, so as to affect the admissibility of evidence of previous acts of lewdness or of taking indecent liberties.

4. SAME—*when complaint of prosecuting witness is not too remote to be admissible in evidence.* In a prosecution for an attempt to commit rape on a child under the age of consent, a complaint made by the prosecuting witness two months after the commission of the alleged offense is not too remote to be admissible in evidence, where the proof shows that the complaint was made within four days after the prosecutrix left the home of the defendant, where she had been living and where she was threatened with bodily injury by the defendant, who stood *in loco parentis* to her, in case she ever told anyone of his acts.

5. SAME—*court may refuse to allow defendant's counsel to interview prosecutrix alone.* It is not error for the trial court, in a prosecution for an attempt to commit statutory rape, to refuse to allow the defendant's counsel to interview the prosecuting witness out of the hearing of the sheriff and the State's attorney.

6. SAME—*conviction under count charging attempt to commit rape is not void because proof shows crime of rape.* In a prose-

cution for an attempt to commit statutory rape, proof showing that
the crime of rape was committed does not render void a conviction
of the crime charged, as proof of the crime of rape involves proof
of an assault with intent to commit rape, and the fact that the
evidence proving the defendant guilty of the attempt also proves
an offense of greater magnitude than the crime charged is not a
variance between the proof and the indictment.

7. SAME—*when failure to give instruction limiting proof under
nollied counts is not error.* In a prosecution for an attempt to com-
mit statutory rape, failure of the court to give an instruction lim-
iting and regulating the proof offered by the People under counts
charging the taking of indecent liberties with the prosecutrix is
not error, even though said counts were subsequently *nollied,* where
no such instruction was presented to the court and no motion was
made to limit said evidence.

WRIT OF ERROR to the Circuit Court of DeKalb county;
the Hon. MAZZINI SLUSSER, Judge, presiding.

THOMAS M. CLIFFE, and HARVEY GUNSUL, for plaintiff
in error.

EDWARD J. BRUNDAGE, Attorney General, CASSIUS
POUST, State's Attorney, and JAMES B. SEARCY, (L. B.
SMITH, and L. F. MOUDRY, of counsel,) for the People.

Mr. CHIEF JUSTICE STONE delivered the opinion of the
court:

The plaintiff in error was convicted in the circuit court
of DeKalb county of the charge of assault with intent to
commit rape.  An indictment consisting of eleven counts
was filed against him, the first seven of which charged the
taking of indecent liberties with Mary Charmois.  Two (the
eighth and ninth) charged assault with intent to commit
rape on Mary Charmois, a female child under the age of
sixteen years, to-wit, of the age of thirteen years. Before
the trial the tenth and eleventh counts were *nolle prossed*
by the State's attorney. Counsel for plaintiff in error filed
a motion for a bill of particulars, which was denied.  They

also at the opening of the trial filed a motion to require the State to elect upon which counts they would rely to secure a conviction.   The trial court denied this motion at that time but intimated that as the trial progressed such motion might be again considered.   During the direct examination of the prosecuting witness the motion was renewed, and the court required the State to elect on which counts it would rely. In accordance with that direction the State elected to rely upon the eighth and ninth counts, charging assault with intent to commit rape, the eighth making no charge of such assault by force but the ninth charging force. At the close of the People's case the State entered a motion to *nolle pros.* the first seven counts of the indictment, charging the taking of indecent liberties. The jury found the plaintiff in error guilty of assault with intent to commit rape in manner and form as charged in the indictment and fixed his age at forty-five years.

The evidence shows that during the months of November and December, 1919, the plaintiff in error visited the home of his sister, who is the mother of the prosecuting witness, Mary Charmois, in Moyen Moutiers, France. While visiting there he told his niece, Mary Charmois, of his "castle" in America, his piano, his beautiful garden and flowers, and solicited her to return with him to this country.   On January 10, 1920, he and Mary arrived at his farm home in DeKalb county.   His family consisted of his wife, Mary Mason, and two sons,—Albert, aged fourteen years, and LeRoy, aged ten years. Shortly after the arrival at the home of plaintiff in error Mary commenced attendance at the district school, in which LeRoy Mason was a pupil, and continued attending such school during her residence with the Mason family, with the exception of the summer vacation period.

The testimony of the complaining witness was in substance as follows:   During the latter part of January, 1920, on an occasion when plaintiff in error was taking her and

his son LeRoy to school in a buggy, he directed vulgar, lascivious and lewd language to her in the French language, which none of his family understood or spoke, and at this time he thrust the handle of his whip between her legs, near her private parts. On numerous occasions thereafter he indulged in lewd and vulgar talk directed to her in the French language. At various times he got hold of her skirts and legs, putting his hands under her skirts on her legs and private parts and kissing her. On some occasions he threatened her, telling her that if she did not submit to his wishes she would not receive any of the things he offered her and she would be scolded and punished, and that if she told about these acts he would kill her. On the morning of August 17, 1920, about eight o'clock, he took his wife in his automobile to the home of a neighbor, Mrs. Louise Schmidt, to assist in preparing dinner for threshers. On this day Mary was left at home to take care of the housework, and while she was sprinkling clothes in the kitchen the plaintiff in error came in, placed his arms about her, made suggestive and vulgar remarks to her and proposed intercourse with her. She attempted to escape, but he threw her on the floor, put his hand over her mouth to stifle her outcries, and thrust his private parts against her so that she was in pain for the remainder of the day and noticed blood on her body and clothing. Her testimony also showed that on later occasions plaintiff in error made attempts to take indecent liberties and practices with her.

The testimony for the State showed that in October, 1920, the complaining witness was taken from the home of plaintiff in error and placed in the custody of Oscar Ramer by reason of a petition filed in the county court of DeKalb county charging that she was a dependent child, for the reason that she had not proper care and guardianship, and that her home, by reason of cruelty and depravity, was an unfit place for her. The record shows that on October 17 the prosecuting witness told Mrs. Harriet Strevor

of the assault testified to by her as having been committed
by plaintiff in error on August 17, 1920. The record also
shows that this was the first person to whom the prosecut-
ing witness made complaint of her treatment, and one of
the contentions of plaintiff in error is that the testimony
of Mrs. Strevor as to that statement was incompetent by
reason of the lapse of time following the alleged assault
before such statement was made.

Plaintiff in error testified on his own behalf and denied
*in toto* the charges in the indictment or that he at any time
used obscene or lewd language in the presence of the prose-
cutrix or took any indecent liberties with her. He testified
that on the 16th and 17th of August, 1920, the latter being
the day testified to by the prosecutrix as the day when the
assault was committed, he was hauling manure from the
barn out on the farm; that he started about eight o'clock
in the morning on Monday, the 16th; that his older boy,
Albert, was helping him; that while he went out to deposit
the loads upon the farm the boy stayed about the barn;
that his wife was absent assisting Mrs. Louise Schmidt in
preparing for the feeding of threshers; that he had taken
her to the Schmidt home about 7:30 in the morning in his
car; that the prosecuting witness prepared the dinner, as-
sisted by plaintiff in error's sons, Albert and LeRoy; that
there was no one else on the premises that day and he was
not at the house; that in the evening he went to Schmidt's
and brought his wife home. His recital as to what occurred
the next day, the 17th, is practically the same as that of
the 16th as to what he and his son Albert were doing. He
testified that on that day his son LeRoy was in the house
with the prosecutrix. Albert corroborated his father as to
what he was doing during those two days. LeRoy testi-
fied that he was in the house that day with the prosecutrix,
and that she spent the time reading books or catalogues.

While numerous errors are complained of, the follow-
ing are presented in argument: First, that it was error

for the court to refuse, before the commencement of the taking of evidence, to compel the People to elect on which count or counts they would proceed; second, that the court erred in allowing proof, over the objection of plaintiff in error, of substantive crimes arising out of different transactions; that the verdict was against the weight of the evidence, and that the conviction cannot stand for the reason that the proof shows it was a consummated act of rape while the indictment charged an assault with intent to commit rape, the verdict being for the lesser crime. It is also urged that it was error to admit the testimony of Mrs. Strevor concerning the statement made by the complaining witness to her two months after the alleged assault.

The matter of requiring the State to elect on which overt act the prosecution will stand, and the time at which such election shall be made, was one resting in the discretion of the trial court and will not be reviewed except in a case of clear abuse of that discretion. The courts of some States hold that the State must make an election before the hearing of the evidence, while others adopt the rule that the first proof of overt acts constitutes an election at law. Neither of such rules has ever been adopted in this State. The rule giving discretion to the trial judge in cases of this character, particularly where there is no claim of alibi, is and has been the rule in this State. (*People* v. *Duncan*, 261 Ill. 339; *People* v. *Gray*, 251 id. 431; *Crane* v. *People*, 168 id. 395.) In this case the State was required to elect before the completion of the testimony of the prosecuting witness. Plaintiff in error contends, however, that the opening statement of the State's attorney showed that he had an intimate knowledge of the facts to be presented to the jury, and for that reason he should have been required to elect at the outset. There appears to have been no abuse of the discretion on the part of the trial judge in this particular. There was proof of but the one assault with intent to commit rape, shown by the testimony of the

complaining witness to have been on August 17. Other acts the evidence of which is complained of were acts of taking indecent liberties prior and subsequent to the act charged in the eighth and ninth counts of the indictment. Under the authority of *People* v. *Duncan, supra,* it was not error to refuse to require the election before the taking of proof.

Concerning the contention that the court erred in admitting testimony as to previous acts of lewdness and taking indecent liberty, we are of opinion that such cannot be sustained. Proof of acts of indecent liberties was made before the counts charging such were *nolled.* Proof of acts of lewdness showing a course of conduct leading up to the assault was competent, not for the purpose of proving distinct offenses but for the purpose of showing the relations that existed between the parties and a course of conduct of plaintiff in error leading up to the act complained of. *People* v. *Duncan, supra; People* v. *Gray, supra.*

It is earnestly insisted that while this may be the rule in a case where the assault is without force on a female child under the age of consent it does not apply where the proof shows that the assault was with force and against her will, and that under that state of proof the crime was the same as common law rape and evidence of previous acts of lewdness or taking indecent liberty is incompetent. This is not, however, the rule as laid down in *People* v. *Gray, supra,* and cases cited. No such distinction is there drawn, and, indeed, where statutory rape is charged, an element of the crime lies in the fact that the female child is too young to consent. If in law she cannot consent we are unable to see wherein the use of force changes the character of the charge from statutory rape to the common law crime. As said in *People* v. *Gray, supra:* "On reason and by the great weight of authority, in a prosecution for rape of a female under the age of consent, other acts of sexual intercourse between the same parties are admissible as corroborating the

prosecuting witness' testimony concerning the particular act relied upon for conviction." This being the rule as to the admissibility of evidence of other acts of sexual intercourse, we can see no good reason why prior acts of lewdness and taking indecent liberty may not be shown.

Counsel for plaintiff in error also contend that it was error to admit testimony of subsequent acts of lewdness. It was held in the case of *Crane* v. *People, supra,* which was a charge of adultery, that acts subsequent to the one relied upon may be proved as characterizing the acts and conduct of the parties complained of as constituting the particular offense charged; and it was said in *People* v. *Gray, supra,* that no difference exists between those cases where the charge is adultery and where it is rape of a female child under the age of consent. Moreover, it cannot be said, on the record in this case, that had the testimony of such specific acts of lewdness not been admitted the verdict of the jury would have been different. The proof in this case fully justified the verdict, not only from the clear and unshaken statement of the complaining witness, but from the testimony and circumstances tending to corroborate her, including the testimony of the physician who made a physical examination of her after the time of the alleged assault. As was said in *People* v. *Karpovich,* 288 Ill. 268: "Crimes of this character are usually committed under circumstances that do not admit of corroborative testimony by eye-witnesses." The circumstances here tend to corroborate the complaining witness. The fact, which is not denied, that she was very frequently in the company of the plaintiff in error, that he stood *in loco parentis* to her, that he frequently took her into the fields and garden to work with him, affording opportunity to commit the crime, tended to lend credence to her story. The People's witness Genevieve VanEppen, who was the complaining witness' teacher, testified that on one occasion when the plaintiff in error appeared at the school building the complaining witness

clutched her by the arm and appeared to be frightened. It would be unreasonable to assume that this child could detail so many facts and circumstances surrounding the alleged previous acts of lewdness,—many of which circumstances are not denied though the acts themselves are,—if her story was fabricated. The jury were fully justified in returning a verdict of guilty.

It is also contended that it was error to permit Mrs. Strevor to testify concerning the complaint made to her of the alleged act. The record shows that this statement was made on October 17, 1920, which was two months after the alleged assault; but the evidence also shows that it was within four days after the complaining witness left the home of plaintiff in error and went to that of Oscar Ramer. The rule is, that in this class of cases it may be shown by the testimony of third persons that the prosecutrix made complaint to them, provided such complaint is made as soon as practicable or without any inconsistent delay. There is no set rule, however, as to what shall constitute an inconsistent delay. In this case the complaining witness was in the home of plaintiff in error and under his physical control. Moreover, it is shown by her testimony that he had threatened to do her bodily injury if she made complaint of his conduct. There appears to have been no sufficient reason why this girl could have been expected to make complaint prior to her leaving the home of plaintiff in error. We are of opinion, therefore, that under the record in this case the delay in making this statement was not inconsistent. The circumstances in which the prosecutrix was placed and the fear under which she was laboring negative such inconsistency. The court, therefore, did not err in admitting the testimony of such statement.

It is also contended that it was error to refuse the motion of plaintiff in error to require the production of the prosecuting witness for interview. It appears that the complaining witness was produced and told that she could talk

to counsel for plaintiff in error or not, as she saw fit, and that counsel for plaintiff in error was not permitted to question her out of the hearing of the sheriff and the State's attorney. It was held in *People* v. *Duncan, supra,* that the fact that neither the accused nor his counsel had opportunity to interview the prosecuting witness, in a case of this character, was not ground for a continuance, and that the court was not required to enter an order requiring her to be produced for the purpose of granting an interview. In this case the interview was granted, and we see no error in the fact that counsel were not permitted to interview her alone.

Counsel further contend that conviction in this case of assault with intent to commit rape cannot be sustained, for the reason that the facts show, if taken to be true, that the crime of rape, and not of assault with intent to commit rape, was proven. The test in this class of cases is whether or not the evidence shows plaintiff in error to be guilty of the crime charged, and the fact that the evidence proving him so guilty may also prove an offense of greater magnitude is not a variance between the proof and the indictment upon which the verdict is based. Proof of the crime of rape also involves proof of an assault with intent to commit rape, and though it be conceded that in this case the proof does show the crime of rape, such does not make void the conviction of the crime charged. *People* v. *Karpovich, supra.*

It is contended that the court erred in not giving to the jury an instruction limiting and regulating the proof offered by the People as to taking indecent liberty, and the argument is that since the counts for taking indecent liberty were *nolle prossed,* the purpose and effect of the proof should have been limited to that of showing the relations of the parties, merely, and that this was not done. It is sufficient to say that no such instruction was offered on the part of plaintiff in error, and it is not the duty of a court to prepare and give instructions of its own motion, although

it may properly do so in some instances. If counsel desired the benefit of an instruction of this character they should have presented one to the court. There appears to have been no motion to limit the testimony pertaining to previous acts of taking indecent liberty that was offered under the first seven counts of the indictment prior to their having been *nolle prossed*.

Counsel complain of the refusal of the court to give to the jury the sixth refused instruction. By this instruction the jury were told, in substance, that the prosecution having elected to rely for conviction upon the assault which they allege defendant made upon the complaining witness about the middle of August, unless they believed from the competent evidence, beyond all reasonable doubt, that he did the act complained of, with the intent charged, they should find the defendant not guilty, no matter how many other assaults may have occurred upon the prosecutrix on other days or dates and no matter what acts of obscene conduct and indecency occurred between the prosecutrix and the defendant on other days or dates. This instruction was marked "Refused," as having been covered. An examination of the given instructions shows that the last instruction given for the plaintiff in error informed the jury that the charge was limited to the crime of assault with intent to commit rape about the middle of August, 1920, and if they had any reasonable doubt in their minds as to the guilt of the defendant on that charge they should acquit him. The refused instruction merely stated in another form the substance of the given instruction.

An examination of this record, which is of some length, discloses that there is no reversible error contained therein. The judgment of the circuit court will therefore be affirmed.

*Judgment affirmed.*