(No. 29652.—
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALTER DEFRATES, Plaintiff in Error.

*Opinion filed Nov. 20, 1946—Rehearing denied January 20, 1947.*

440

Harold V. Snyder, of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, all of Chicago, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Walter DeFrates, was indicted in the criminal court of Cook county. The indictment consisted of two counts. The first charged rape and the second the crime against nature committed upon and with the prosecuting witness. A motion to quash the indictment was overruled, and after a plea of not guilty was entered, and motion to suppress certain evidence overruled, defendant was tried before a jury and found guilty on both counts. Motions for a new trial and in arrest of judgment being overruled, he was sentenced to the penitentiary on the charge of rape for a term of one year and for the crime against nature for a minimum of nine years and a maximum of ten years, the sentences to run concurrently.

The prosecutrix, a girl seventeen years of age, was employed as a salesgirl in Kresge & Company's store at 7830 South Halsted street in the city of Chicago, a short distance from where she was living with her brother and sister. She met the defendant around four o'clock in the afternoon of October 8, 1945, at the counter in the store where she was employed. The defendant engaged her in conversation, and after making a small purchase, inquired as to the salary she was getting. When she told him, he advised her he knew a man who would give her a better job, answering the telephone, that he would see his friend George about it. He also advised her he was going horseback riding with some boys and girls that evening and asked if she would like to join them. She told him it would be necessary for her to go home first and get ready and he advised he would be back about 6:15 P.M. to take

her home. After the closing hour he was waiting for her in his car parked at the curb in front of the store, which she entered for the purpose of being taken home.

Prosecutrix testified that after she entered the car defendant started driving and when he did not turn at Seventy-ninth street, she asked where he was going and he replied, "Out to see George," who was the friend he had told her would give her employment. According to her testimony he drove some distance and came to a house which he said was "George's house, but George must not be at home as he did not see his car." She also testified that the defendant advised her in the ride that his name was Joe Doherty; that she told him she had to go home but he kept on driving out into what seemed like country and when she asked where they were going, he said, "Out to see the ski jump;" that after driving to this point he turned the car around and started to kiss her and she pushed him away and asked him to take her home as her brother would be worried about her; that he drove back to the highway and turned left and drove approximately a mile and turned off into a narrower road at which point, after choking her and threatening her with a gun, which she said was taken from the glove compartment, he committed the crimes as charged in the indictment. The record discloses he then brought the prosecutrix to her home where she left the car and ran crying into the house; that her brother opened the door and asked her what was wrong and she said, "I have been raped." Her brother testified that prior to the time she came in he heard a car drive away speedily, and that the clothes of prosecutrix were turned around, her hair was mussed and she was crying.

The defendant admitted he had intercourse with the prosecutrix but denied any force was used. He testified that she was the one who made the date while he was in the Kresge store and asked him if he had any money and if he wanted to have some fun; that she told him she was

short ten dollars in her pay and suggested, "Let's take a ride." The defendant denied all of the acts tending to show the crime against nature.

If the facts as testified to by the prosecutrix are true the defendant was properly found guilty as charged. On the contrary, if the testimony of the defendant is to be believed, she was the one who suggested they go out and have some fun, and not only encouraged, but willingly entered into, the act of intercourse. It is unnecessary to detail for the record here the sordid facts which are shown by the evidence.

The prosecutrix testified that there was no indication of any assault by the defendant until he suddenly stopped the car at a secluded spot and began to embrace her; that when she resisted his advances he put his hand around her neck choking her; that she screamed as her breath began to get short; that she was told to go ahead and scream because no one would hear her and that defendant said, "What do you think I brought you out here in the wilderness for;" that he then reached into the glove compartment, pulled out a gun, pointed it at her and told her to get in the back seat where, as she testified, he committed the acts as charged in the indictment.

Defendant, in his testimony, emphatically denied use of a gun and that any force was used; that prosecutrix submitted to his advances and that she suggested the ride after telling him she was short ten dollars in her pay at the store and asked him if he had any money.

Certain facts as testified to by the defendant are not consistent with his contention. After he was arrested several days later by the police and brought in before prosecutrix with a number of other persons at a "show up" for identification, she immediately pointed him out as her assailant and he denied he had "ever seen the woman before." The fact that he gave her an assumed name of "Joe Doherty," which could not be located in the directory

after the assault, with the other circumstances, is not consistent with his statement that she asked to be taken out and entered into the act of intercourse voluntarily. The testimony reveals that the seventeen-year-old girl had recently come to the city to live with her brother and sister and had not been there long enough to become acquainted with the streets or directions; that she had only been employed in the Kresge store for a little over a week. It hardly seems probable that she would accost a stranger under such circumstances, ask him for a ride and if he had any money, commit the acts complained of, and on return home, run crying into the house in a disheveled condition and make the statement that she "had been raped." This complaint was corroboration of her testimony.

In cases of prosecution for rape or for an assault with intent to commit rape, it may be proved by testimony of third persons that the prosecutrix made complaint to them, provided such complaint is made as soon as practicable, or without any inconsistent delay. This is an exception to the general rule that hearsay evidence is inadmissible. The law allows the exception upon the generous supposition that a woman thus wronged will be prompted to express her indignation at the injury inflicted upon her. The fact that the prosecutrix made a complaint immediately after the occurrence is allowed to be proved because it tends to corroborate her testimony as given on the trial. *People* v. *Vaughn,* 390 Ill. 360.

The contention of the defendant that there must be some corroborative evidence, facts or circumstances to sustain a conviction of rape other than the contradicting testimony of the complaining witness, and his citation of *People* v. *Carruthers,* 379 Ill. 388, and other cases on this point, is met with the testimony of prosecutrix's brother, uncontradicted in the record, that his sister came crying into the house with her clothes turned around and her hair mussed up, telling him she had been raped. The fact

that she remained in the car until returned home would not, under the circumstances as shown here, lessen the probative force of her complaint. Defendant still had the gun he had threatened her with at the time of the assault and she was under his control and restraint until she reached home when she immediately made complaint. This is corroboration of her testimony. We have clearly held, however, that where the testimony of the prosecutrix is clear and convincing it is not necessary that she be corroborated in order to sustain a conviction. *People* v. *Vaughn,* 390 Ill. 360; *People* v. *Polak,* 360 Ill. 440; *People* v. *Sciales,* 345 Ill. 118.

The determination of the question whether the defendant or the prosecutrix told the truth is the primary function of the jury. It is apparent the jury, in the discharge of that function, believed the prosecutrix and not the defendant. The jury, acting within the province committed to it, has passed upon the credibility of the witnesses and has determined the weight of the evidence. (*People* v. *Vaughn,* 390 Ill. 360; *People* v. *Hiddleson,* 389 Ill. 293.) Unless this court can say, upon review of the whole record, that the verdict is manifestly contrary to the weight of the evidence the verdict of the jury will not be disturbed. *People* v. *Polak,* 360 Ill. 440; *People* v. *Fitzpatrick,* 359 Ill. 363; *People* v. *Sciales,* 345 Ill. 118.

It is urged the defendant was required to stand trial a second time due to the fact that at his first trial the jury was discharged without cause after only forty-five minutes of deliberation and that this constituted double jeopardy. Defendant was first tried on January 28, 1946, and after three days of trial the jury retired, and, after forty-five minutes of deliberation, returned to the courtroom with the foreman who was interrogated by the court as to whether the jury was able to arrive at a verdict. The foreman replied, "Just about." The court then asked him to answer the question "Yes or No," and he then answered,

"No." The court then discharged the jury. It is apparent the court acted rather hastily but we hardly see how the record justifies the assertion that the trial court abused its discretion in the premises, nothing appearing to show such abuse. A court of review will not presume an abuse of discretion. It has long been recognized by this court and elsewhere that a court of justice is invested with the authority to discharge a jury from giving any verdict whenever, in the court's opinion, there is manifest necessity for such act or the ends of public justice would otherwise be defeated, and that such is within the discretion of the trial court and is not subject to review in the absence of abuse of discretion. (*People* v. *Simos,* 345 Ill. 226; *People* v. *Peplos,* 340 Ill. 27; *Dreyer* v. *People,* 188 Ill. 40; *United States* v. *Perez,* 9 Wheat. 579; *Simmons* v. *United States,* 142 U.S. 148.) The record here does not show abuse of discretion.

It is contended the second count of the indictment charging the infamous crime against nature is insufficient because it did not describe the act of which defendant was accused. The indictment was drawn in the language of the statute and we have held the language of the statute is sufficient. (*Kelly* v. *People,* 192 Ill. 119; *Honselman* v. *People,* 168 Ill. 172.) As was said in the *Honselman case,* "The legislature has not seen fit to define it further than by the general term, and the records of the courts need not be defiled with the details of different acts which may go to constitute it. A statement of the offense in the language of the statute, or so plainly that its nature may be easily understood by the jury, is all that is required." We are of the opinion the defendant was sufficiently informed as to the nature of the offense as charged in the indictment. The cases in Illinois are decidedly against defendant's contention.

Defendant contends the court erred in not quashing the indictment which was found on the evidence of prosecutrix,

where her name was not endorsed on the back thereof. The purpose of endorsing names on the back of an indictment is to furnish the defendant with such names, and to give him an opportunity to interview the witnesses who appeared before the grand jury, and afford him an opportunity to find out what they knew about the charge preferred against him. (*People* v. *Whitmer,* 369 Ill. 317.) The omission of prosecutrix's name from the back of the indictment did not, in any way, militate against the defendant in his preparation for trial, or deny him an opportunity to interview the witness. He knew who the complaining witness was as she had pointed him out as her assailant at the time of his arrest and his own testimony showed he was in her company on the evening in question.

Defendant next contends the court erred in refusing to suppress the introduction in evidence of the revolver which he claims was seized in his home without a search warrant. The evidence reveals that the defendant gave permission for the officers to go to his home and secure the gun from his wife; that they did so and she voluntarily gave it to them. Under such circumstances, we hardly see how it could be said there was an illegal search and seizure.

Defendant further contends that the gun was not positively identified by the prosecutrix, and that certain testimony offered by the People in rebuttal pertaining to the weapon was entirely improper and immaterial. It is true the record discloses that when the prosecutrix was asked to identify the gun her answer was not entirely responsive, however, no objection was made to the answer and, as it stood, it was sufficient to support the introduction of the gun in evidence. We are also of the opinion that the rebuttal testimony was proper. The defendant had testified that he did not have the gun out of his home on October 6. The testimony of the witness on rebuttal was that she saw this gun in defendant's car on October 6, two days prior to the day the crime was committed.

It is contended by the defendant that such testimony was highly prejudicial in that it tended to prove the defendant had been out with another girl and to make defendant look bad in the eyes of the jury. It is rather hard to say as to just what inference might or might not be drawn by a jury from evidence properly presented on certain issues in the case. No authority is cited in the brief or argument on this phase and we are of the opinion that this rebuttal testimony could not, in any way, have reasonably affected the verdict of the jury. On reviewing judgments of conviction in criminal cases the purpose of the reviewing court is not to determine whether the record is perfect, but whether the defendant has had a fair trial under the law, and if error in the record could not reasonably have affected the result of the trial, the judgment should be affirmed. (*People* v. *Fedele,* 366 Ill. 618.) It is not the province of a court of review in a criminal case to determine whether the record is free from error or to reverse a judgment because some error may have been committed, but rather to determine whether or not the accused has had a fair trial under the law and has been proved guilty beyond all reasonable doubt. *People* v. *Hoffee,* 354 Ill. 123.

The jury, acting within the province committed to it, has passed upon the credibility of the witnesses in this case and has determined the weight of the evidence and we cannot see, upon review of the whole record, that there is a reasonable doubt of the guilt of defendant. The verdict of the jury, therefore, will not be disturbed. The judgment of the criminal court is affirmed.

*Judgment affirmed.*