(No. 50217)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. CHARLES E. SECRET, Appellant.

*Opinion filed September 19, 1978.*

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B. Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and Lee T. Hettinger, Renee Goldfarb, and Richard Heytow, Assistant State's Attorneys, of counsel), for appellee.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

The defendant, Charles E. Secret, was indicted for

aggravated kidnaping, rape, and deviate sexual assault, in violation of sections 10–2, 11–1, and 11–3, respectively, of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, pars. 10–2, 11–1, 11–3). After a trial by jury, in which he was represented by retained counsel, the defendant was acquitted on the kidnaping charge, but was convicted on the charges of rape and deviate sexual assault. He was sentenced to concurrent terms of not less than 7 and not more than 21 years on each charge. The appellate court affirmed, with one judge dissenting (54 Ill. App. 3d 917), and we granted the defendant's petition for leave to appeal.

It is not questioned that the defendant had sexual relations with the complainant at the time charged in the indictment. The sole defense is that the State failed to prove beyond a reasonable doubt that the acts charged were done against the will of the complainant.

The offenses were charged to have taken place in the early hours of January 9, 1975, in an apartment occupied by the defendant in a building located in Chicago. The complainant testified that about 9 p.m. on the preceding day she had gone to a bar, which was located just across the street from the apartment building where the defendant lived, and only a short distance from the complainant's own residence. About an hour after her arrival she observed that the defendant was also in the bar.

The complainant had become acquainted with the defendant about a month and a half before, having met him at this same bar, which each of them frequented. On January 4, the complainant testified, as she was leaving the bar to return to her home, she met the defendant, who was just entering. He followed her outside and told her that he wished to talk to her, and she accompanied him to his apartment. Upon arrival at his apartment the defendant told her that he wished to have sexual intercourse with her, but upon learning that she was in her menstrual period

he did not persist. The complainant's testimony did not show that the defendant used force or the threat of force to induce her to accompany him to his apartment, and no charge is made that he committed any criminal offense on this occasion.

Because of this encounter with the defendant, the complainant testified, she became apprehensive upon seeing him in the bar after her arrival there on January 8. Although he did not molest her or even converse with her, she testified he made her uneasy by staring at her steadily. She first attempted, unsuccessfully, to reach her husband by telephone, and then called a friend named Irene Cady at a bar where the latter was employed. Ms. Cady, who was called as a witness by the State, testified that the complainant had called her between 10:30 and 11 p.m. that evening, and had told her a man was "bothering" her. Ms. Cady advised the complainant to take a cab over to her place of employment. When the complainant said that she had no money with her, Ms. Cady offered to pay the cab fare. The complainant did not go to the other tavern, however, and Ms. Cady did not hear from her again.

The complainant testified that after talking to Ms. Cady, she then called a cab. She did not take this cab, however, because when it arrived, the driver appeared to be drunk. She left the lounge to hail another cab on the street. It was then about 1:30 or 2 a.m. As a cab pulled up and the complainant was about to enter it, the defendant came out of the lounge behind her, grabbed the collar of her coat and told the cab driver to leave. The complainant managed to break loose, and began running down the street, screaming. The defendant, who was 6 feet 5 inches tall, and who weighed 270 pounds, caught up with her, grabbed her, and hit her in the jaw, knocking her to the pavement, she testified. He told her that if she didn't shut up, he would throw her through the plate glass window of a store in front of which they were then standing. At that

the complainant stopped screaming.

The defendant kept hold of the complainant, and pulled her along to the entrance to his apartment building. He dragged her up to his apartment, pushed her inside, and told her to undress. When she failed to do so, the defendant hit her in the head several more times, she said. He started to remove her clothes, tearing some of them in the process, and the complainant thereupon removed the rest of them herself. He compelled her to have intercourse with him, and, following that, to perform two sexually deviate acts. Some time later the complainant observed that the defendant had fallen asleep. She got dressed, left the apartment, and went directly to a police station located about one block away, where she reported the incident. The complainant was unable to specify how much time had elapsed between her arrival at the defendant's apartment and her departure from it, but the policewoman to whom she talked at the police station testified that the complainant arrived there at 7 a.m.

The policewoman testified that the complainant seemed very nervous and upset, that there were buttons missing from her blouse, and that her slacks were dirty. These articles of clothing were introduced in evidence at the trial. The account of the evening before given to the police by the complainant was substantially the same as her trial testimony summarized above.

The complainant directed police officers to the defendant's building, and remained outside while they went up to the defendant's apartment. They told him he was under arrest for rape, and advised him of his *Miranda* rights. When he asked who the complainant was and was told, the defendant said, "I got a little rough with her last night and she might be mad." He also stated that the complainant was his girl friend, that after leaving the lounge they had had an argument in the course of which he had hit her, but that she had subsequently come to his

apartment and had willingly had intercourse with him. He stated further that she had had intercourse with him on about five previous occasions.

That sexual intercourse with the complainant had taken place was corroborated by stipulated evidence of a medical examination made of the complainant later in the day. No other medical evidence was introduced. The defendant did not testify, and his witnesses gave no testimony materially bearing on the events of the night in question.

In arguing for reversal, the defendant, relying on *People v. Faulisi* (1962), 25 Ill. 2d 457, 461, contends that in reviewing rape convictions, particularly those in which an act of intercourse is admitted but there is a question whether the complainant consented to it, the court must appraise the evidence with special care. The reason for such a rule, the defendant asserts, is the recognized difficulty in defending against a charge of rape. (See *People v. Scott* (1950), 407 Ill. 301, 304.) The defendant contends that the majority in the appellate court failed to observe this required standard of review.

To begin, we note that the defendant's formulation of the standard for review in rape cases calls for some qualification, for this court has also stressed that it is primarily the function of the trier of fact to pass upon the credibility of witnesses and the weight of the evidence. (See *People v. DeFrates* (1946), 395 Ill. 439, 445; *People v. Perez* (1952), 412 Ill. 425, 428.) Nor do we agree with the contention impliedly made by the defendant that no conviction for rape can be sustained unless the complainant's testimony is corroborated by other evidence. This court has held that where the complainant's testimony is clear and convincing, corroboration is not required. *People v. DeFrates* (1946), 395 Ill. 439, 445; *cf. People v. Szybeko* (1962), 24 Ill. 2d 335, 339.

We need not determine, however, the extent to which

the standard of review in convictions of rape may be different from that in convictions of other crimes, for we are satisfied that the complainant's testimony was corroborated here. It was corroborated by the condition of her clothing and by the defendant's admissions to the police. Her testimony was also corroborated, as that term is used in prosecutions for rape (see, *e.g., People v. Damen* (1963), 28 Ill. 2d 464, 470, 472-73; *People v. DeFrates* (1946), 395 Ill. 439, 444), by her reporting the incident to the police after leaving the defendant's apartment. The two police officers to whom the complainant and the defendant spoke were also called as witnesses.

The defendant makes much of the fact that the complainant's testimony was that she arrived at the defendant's apartment about 2 a.m., and that according to the police, she did not arrive at the police station until 7 a.m. The defendant's counsel suggested in oral argument that the complainant left the apartment much earlier, and thus would have had time enough to go to her own home and alter the condition of her clothes. The defendant thus maintains that the complaint does not qualify as a prompt one.

There is no definite limit of time within which a complaint must be made. (*People v. Ristau* (1936), 363 Ill. 583, 587.) Obviously no fixed time could be set, since whether an earlier complaint was possible necessarily depends upon the circumstances in which the complainant finds herself. In *People v. Mason* (1921), 301 Ill. 370, a judgment of conviction of assault with intent to commit rape was upheld although the complainant's first statement about the assault was not made until two months after the date when it occurred. Until four days previously, however, the complainant had been residing in the home of the defendant and was under his physical control. The court held that under such circumstances the delay in making the complaint was not inconsistent with its truth. (See 301

Ill. 370, 378.) Here the complainant testified that following completion of the third sexual act the defendant remained in close physical contact with her, and that she did not dare attempt to leave until she became sure that he had fallen asleep. We believe that under the evidence the complaint here was made as soon as it was practicable.

In this connection it is important to note that the question here is not whether the complainant's complaint would qualify as a spontaneous declaration, as to which some immediacy may be required, but whether it qualifies as a corroborative statement. The significance of the latter rests upon the assumption that the victim of a rape would naturally speak out concerning it, and the purpose of its admission into evidence is to negate the presumption that would otherwise arise that no rape had in fact occurred. See *People v. Damen* (1963), 28 Ill. 2d 464, 472.

The defendant calls attention to the fact that the complainant returned to the same bar only a few days after her earlier encounter with the defendant there. The defendant also suggests that there had been a prior relationship of personal intimacy between the complainant and him. The testimony as to this, however, was confined to a single occasion when the defendant and the complainant danced together a few times at a club dance, and to another occasion when the two were in a shop where the defendant bought the complainant a dress. We do not believe that the jury was required to disregard the complainant's testimony on the ground that her return to the bar amounted to an invitation to the defendant from which her consent to sexual intercourse must be inferred.

For the reasons given the judgment of the appellate court is affirmed.

*Judgment affirmed.*