THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES F. O'BRIEN, Defendant-Appellant.

Third District   No. 78-151

Opinion filed July 24, 1979.—Rehearing denied August 15, 1979.

STOUDER, P. J., dissenting.

Robert Agostinelli and Michael Filipovic, both of State Appellate Defender's Office, of Ottawa, for appellant.

William D. Henderson, State's Attorney, of Macomb (Raymond F. Buckley, Jr., and Curtis L. Blood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant James F. O'Brien appeals from a conviction in the Circuit Court of McDonough County of the offense of attempt deviate sexual assault. (Ill. Rev. Stat. 1977, ch. 38, pars. 8—4(a), 11—3(a).) After conviction in the jury trial, the court sentenced the defendant to a five-year term of probation and ordered him to pay a fine of $5,000. Two issues are raised by the defense on this appeal: (1) whether the defendant was proven guilty beyond a reasonable doubt and (2) whether the court abused its discretion when it refused to give an instruction tendered by the defense.

The record discloses that at trial only two persons testified, the complainant and the defendant. The complainant, John Hawkes, a Western Illinois University student, testified that on the night previous to the assault he was studying in his dormitory room for an exam the next morning. During the night some other students came into his room, and among them was the defendant James O'Brien, who was known to Hawkes and who also lived in the dormitory. Hawkes testified that he and O'Brien were studying late into the night. The others left. Hawkes fell asleep around 6 a.m. but awoke around 6:45 a.m. to see the defendant standing over him. Hawkes said that the defendant then offered to perform fellatio with Hawkes. Although Hawkes said he at first thought it was a joke, O'Brien insisted he was serious. He told Hawkes that he had better do what he was told. Hawkes said O'Brien then put his forearm on

Hawkes' throat, and while Hawkes was still lying in bed, yanked down Hawkes' pants to his knees, and began fondling him. Hawkes testified that with the forearm on his throat he had difficulty breathing. He said he struggled to get loose, but he was unsuccessful, and that O'Brien did not heed his requests to stop. Hawkes did manage to turn over onto his stomach. At this juncture he said O'Brien informed Hawkes that he could go either way, and then proceded, after pulling his own gym shorts down, to mount Hawkes' backside. There was apparently no penetration, but O'Brien did ejaculate on Hawkes' back. Hawkes said O'Brien then told Hawkes not to say anything and left. Hawkes went to the bathroom at the dorm, washed his face and came back to his room. He waited almost a half hour to shower because O'Brien was in the shower area. After showering, Hawkes had breakfast and went to his 8 a.m. final exam in American literature. Immediately after the final, he went to talk with his resident counselor about the morning sexual assault by O'Brien. An appointment with the head counselor was arranged for the afternoon as well, and after that meeting, Hawkes also met with a member of the office of public safety. A criminal information was subsequently filed.

The defendant James O'Brien took the stand in his own behalf. O'Brien stated that he and Hawkes both fell asleep in Hawkes' dorm room and that he awoke at about 7 a.m. He stated that Hawkes was still asleep and that he left the room and went to his own room across the hall. He denied any contact with Hawkes at all on the morning of the alleged assault. This was the sum of the entire testimony offered during the jury trial.

At the instruction conference, the defense tendered an instruction which stated:

> "The uncorroborated testimony of a complaining witness must be clear and convincing."

The trial judge denied the instruction. Closing argument to the jury and jury instructions were completed. The jury returned a verdict of guilty of attempt deviate sexual assault. The defendant appeals from the conviction.

■■ ■ The first argument by the defense is that the defendant was not proven guilty beyond a reasonable doubt. In support of this it is argued that there exist inconsistencies in the complainant's testimony and that there was no evidence of the use of sufficient force. The record shows that Hawkes' testimony was that force was used. We agree with the defense that the standards to be applied are similar to those in rape cases. Where the only evidence of the commission of an act is the complainant's testimony, then that testimony must be corroborated, or it must be clear and convincing. (*People v. Secret* (1978), 72 Ill. 2d 371, 376, 381 N.E.2d 285.) The supreme court, in *Secret*, also noted the well-established rule

"that it is primarily the function of the trier of fact to pass upon the credibility of witnesses and the weight of the evidence." (*People v. Secret*, 72 Ill. 2d 371, 376.) It must also be shown that the act involved force, against the will of the complaining witness.

> "And while useless or foolhardy acts of resistance are not necessary, if the [complainant] has use of [his] faculties and physical powers, the evidence must show such resistance as will demonstrate that the act was against [his] will." *People v. DeFrates* (1965), 33 Ill. 2d 190, 194-95, 210 N.E.2d 467.

Hawkes' testimony was clear and apparently believed by the jury. There was nothing shown as to any possible reason Hawkes might have had to fabricate such story and it is not the type of story one ordinarily wishes to spread around a campus. As to the lack of bruises or torn garments, the force of a forearm across the neck, especially when applied to someone just awakening and lying supine on a bed, would be sufficient to adequately immobilize a victim and lessen his ability to resist. Hawkes testified that because of the pressure being applied to his throat he was having difficulty breathing. Even then he did manage to struggle and to turn over onto his stomach. O'Brien had warned him to do as he was told, and this threat, coupled with the forearm on the throat, explains any failure of the victim to cry out. Nor do we find inconsistency in the fact that, after the assault, Hawkes showered, ate and then went to his final exam. He had not been physically injured in the attack and may very well not have known how to proceed. There was also O'Brien's implied threat in telling Hawkes not to tell anyone. We note, too, that immediately after taking the exam he contacted his residence advisor at the dormitory and informed him of the incident. Further complaint was also made the same day to the head counselor and the office of public safety. We conclude that under all the circumstances, the nature and timing of the attack, the threat not to tell anyone, and the existence of the final exam, that the relatively minor lapse of time between the attack and initial complaint is amply explained.

■■ Reliance by the defense upon *People v. DeFrates* (1965), 33 Ill. 2d 190, 210 N.E.2d 467, and *People v. Symons* (1961), 23 Ill. 2d 126, 177 N.E.2d 185, given the facts in the instant case, is misplaced. In *DeFrates* (involving rape), where intercourse was admitted, and the sole question was force and the lack of resistance, there was substantial evidence of voluntariness in the record. There is none here. In *Symons* (another rape case), the failure to make a complaint for over 14 hours, without any good excuse, was the significant factor in reversing a rape conviction. In the instant case, there was prompt complaint and any delay was understandable in light of all the circumstances. As stated earlier, it is primarily the function of the finder of fact to determine credibility and to weigh

the evidence. Here, the jury was adequately instructed on the reasonable doubt standard, which was heavily stressed by defense counsel in closing argument and there was sufficient evidence to support the jury finding of guilt beyond a reasonable doubt.

■■ As to the second issue, the question of the jury instruction stating that the testimony of a sole complaining witness in a sex attack case must be clear and convincing, we find no reversible error. The jury was instructed on the standard to be applied to the evidence presented to them. Illinois Pattern Jury Instructions, Criminal, No. 6.07 (1968) (hereinafter cited as IPI Criminal), which details the elements of the offense and states that each element must be proven beyond a reasonable doubt, was given to the jury. IPI Criminal No. 2.03, which states that the defendant is presumed innocent and that the State must prove him guilty beyond a reasonable doubt, was given to the jury. Also given was IPI Criminal No. 1.02, which informs the jury that in assessing credibility, they can consider the manner of the witnesses while testifying, their interest, their bias, prejudice and reasonableness of their testimony. We find that the instructions adequately covered the jury's responsibilities with respect to assessing credibility and weighing the evidence. The denied instruction, a non-IPI instruction, would have unduly drawn attention to particular evidence. (*People v. Sledge* (1966), 71 Ill. App. 2d 285, 218 N.E.2d 845.) We find that for the foregoing reasons, the trial court acted within proper scope of its discretion when it refused to give the non-IPI instruction tendered by the defense.

For the reasons stated, therefore, since we find no reversible error, the judgment of the Circuit Court of McDonough County is affirmed.

Affirmed.

SCOTT, J., concurs.

Mr. PRESIDING JUSTICE STOUDER, dissenting:

I respectfully dissent from the opinion of my colleagues. While I agree with the majority regarding the instruction's issue, I cannot agree that the State proved the defendant guilty beyond a reasonable doubt. I believe the judgment of conviction should be reversed.

While the majority states that the standards to be applied are similar to those in rape cases, I believe the standards are not just similar, but are the same. By relying on *People v. Secret* (1978), 72 Ill. 2d 371, 381 N.E.2d 285, a case involving rape, the majority impliedly agrees. According to the applicable standards set forth in *Secret*, testimony of the complainant must either be corroborated or be clear and convincing. I believe neither was true here.

Although the majority relies on *People v. Secret* (1978), 72 Ill. 2d 371, 381 N.E.2d 285, I believe examination of the language and reasoning adopted in *Secret* supports my position. Initially, I would note that *Secret* is a "corroborating" case as opposed to a "clear and convincing" case and as will appear, the present case falls within the latter category.

In *Secret*, the complainant's testimony was corroborated by the condition of the complainant's clothing, by the defendant's admissions to police, and by reporting the incident immediately after leaving the defendant's apartment, the scene of the rape. Furthermore, there was medical evidence that intercourse had taken place and the defendant did not testify and explain his version of the facts. The court considered that the complaint was made as soon as was practicable. In this regard, the court noted that the question was not whether the complaint would qualify as a spontaneous declaration, as to which some immediacy may be required, but whether it qualified as a corroborating statement.

> "The significance of the latter rests upon the assumption that a victim of a rape would naturally speak out concerning it, and the purpose of its admission into evidence is to negate the presumption that would otherwise arise that no rape had in fact occurred." 72 Ill. 2d 371, 378, 381 N.E.2d 285, 288-89.

Turning to the first part of the applicable standard, under the present facts there is a total absence of corroborating evidence. No medical testimony was available to confirm that defendant ejaculated on the complainant's back. There was no evidence of bruises or similar corroborating factors indicating a struggle had occurred, even though at one point the complainant testified the pressure on his throat was so great he was having trouble breathing. According to the complainant's testimony, he was able to turn onto his stomach. At such a time no physical restraint existed to prevent the complainant from yelling for help and since no dangerous weapon or weapons of any sort were used, the threat of serious injury was nonexistent. Yet, despite this and the nearby presence of other dormitory residents at an hour when many were certainly awake either studying for finals or preparing to take an exam, the complainant did not cry out.

After the defendant left the complainant's room, the complainant could have walked down the hall and informed the RA (resident advisor) of the attack. There was no direct impediment to prevent the complainant from doing so, for the crowded morning hours at a dormitory during finals and the nearness of university authority in the form of a floor resident advisor eliminated any question of defendant's preventing complainant from immediately complaining about the incident. Even under Hawkes' version, after the episode was over defendant allegedly said, "You better not tell anyone about this because it

will look bad for me," meaning defendant. Hence, even according to Hawkes' testimony, defendant did not threaten complainant with reprisal for telling anyone.

Instead of reporting the incident immediately, the complainant chose to take a shower, go to breakfast, take an exam, and only then report the incident to the RA on his floor, if in fact he did make such a report. According to the complainant, after talking to the RA on his floor, he eventually talked to a number of people including the head RA at Hursh Hall, the advisor of another men's dormitory, and finally, someone at "Public Safety." Yet, there is no evidence to corroborate that any of these reports were actually made. While I cannot agree with the majority that a report made as indicated by the complainant is made as soon as practicable, more importantly, there is no evidence corroborating the complainant made the various reports as he testified to. Hence, not only do I question the soundness of the majority's conclusion that a report made as testified to by Hawkes was sufficiently prompt, I question the very premise that such a report was ever made on the day of the alleged assault. In summary then, apart from the defendant admitting to being present in the complainant's room, there is absolutely no evidence corroborating any aspect of the complainant's testimony and certainly no evidence corroborating the existence of the commission of a crime. Hence, defendant's conviction is sustainable, if at all, only if the complainant's testimony is clear and convincing. I do not believe the complainant's testimony achieves that standard, as an examination of his testimony will reveal. While the foregoing discussion was directed toward the lack of corroborating evidence, much of what was said also undermines the credibility of the complainant.

The clear and convincing standard is not a quantitative measure of the proof required to sustain the conviction, which remains proof beyond a reasonable doubt. Rather, when clear and convincing is applied to the uncorroborated testimony of a complainant, such testimony having been controverted by the defendant, it refers to a certain qualitative value of that testimony. The testimony must have some internal strength or quality which supports its credibility or truthfulness in the face of an uncorroborated equally positive denial of the same facts.

Mere assertion alone in the face of an equally positive denial furnishes no basis for concluding the assertion should be believed and its contradiction disbelieved. There must be something more in the quality of the assertion to justify its believability. This is particularly true in a case of this kind where the defendant not only denies his commission of any offense, but is unable to prove affirmatively the nonoccurrence of the offense.

After testifying to studying all night and having been awake for 23 hours, the complainant stated he lay down at 6 a.m. intending to wake himself in time for an 8 o'clock final without the aid of an alarm clock. At 6:45 he claims defendant awoke him with an offer to perform fellatio on him. After the complainant indicated to defendant he thought he was joking, the defendant is alleged to have said he was quite serious and then knelt on the bed and placed his forearm on the complainant's throat. While holding the complainant down with a forearm on his neck, the defendant with his free hand unbuckled the complainant's belt buckle, unzipped his blue jeans, pulled down the jeans to his knees, and pulled his underwear down, all without the complainant's assistance. During the incident, complainant managed to roll over onto his stomach. According to Hawkes, the only thing holding complainant down at this point was defendant's weight. While the defendant's size or weight does not appear from the record, the complainant was six-feet one-inch tall and weighed 165 pounds and a man of such stature was far from being helpless. When complainant was on his stomach with defendant on top of him, the complainant was free to shout or yell for assistance, a tactic which surely would have yielded prompt results in the close quarters of a men's dormitory at 6:45 a.m. Even while complainant was being restrained with a forearm on his throat and the defendant was allegedly unbuckling the complainant's belt and pulling down his pants with his free hand, complainant's hands were free to exercise a variety of defensive tactics. Yet, the complainant admitted that at no time did he kick, hit, bite or scratch his alleged assailant. The complainant did not cry out despite the immediate proximity of others in their dormitory rooms.

In my opinion it strains the bounds of incredulity that an attack on a six-foot one-inch, 165-pound college-age male could occur in the manner testified to by the complainant. I cannot agree with the majority's position that such a state of facts constitutes clear and convincing evidence.

The record reveals a possible motive for fabrication of the incident. According to the record, the complainant was not doing well in the course in which the final examination was to be given that morning. Claiming that an incident took place at the time referred to by the complainant might well have been the basis for seeking and receiving a new examination in the event of a poor showing. Indeed, some of the events are more consistent with fabrication than otherwise. The lackadaisical and leisurely reporting of the claimed incident, as well as the other circumstances, are inconsistent with the conduct of an outraged victim.

Matters of credibility and the weight of the evidence are indeed primarily the domain of the trier of fact, but they are not its exclusive domain. When, as here, the evidence incriminating the defendant is totally

uncorroborated and the testimony of the complainant falls far short of being clear and convincing, questions of fact no longer exist for the jury to consider and it becomes the duty of the court to remove the case from the jury by entering a directed verdict of acquittal. I believe the trial court erred in failing to do so, and defendant's conviction should be reversed.