THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
OLBERT PAYTON, Defendant-Appellant.

Third District   No. 78-291

Opinion filed May 21, 1980.

Robert Agostinelli, Michael Filipovic, and Mark W. Burkhalter, all of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce W. Black, State's Attorney, of Pekin (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Olbert Payton was charged by indictment with rape and deviate sexual assault, was found guilty of those crimes by a jury, and was sentenced to concurrent terms of 6 to 18 years.

Carolyn Hess, the 23-year-old victim, testified that on the evening of October 28, 1977, she went alone to the Heckle and Jeckle Tavern in Creve Coeur, where her brothers were playing in a band. While at the tavern she met and had several drinks with defendant Payton, Bob Todd, and Alan Springer. She had known defendant and Todd for 8 or 9 years and had dated Todd.

Sometime during the evening she left the tavern with Todd to show him her new car. Todd returned to the bar, but Hess felt ill and remained in the car, where she fell asleep. She later awoke to find defendant in the car. He said he wanted to go to bed with her, and when she refused, defendant slapped her across the face twice and drove the auto out of the parking lot onto some country roads.

While on a country road, defendant grabbed her by the hair and forced her to perform a deviate sexual act upon him. Defendant then ordered her to get undressed, which she did. While defendant was undressing himself, she attempted to flee, but defendant caught her and "yanked her into the back seat injuring her shoulder," where they had sexual intercourse. Hess said she left her clothes lying on the road near a white fence. Defendant drove her back to where his truck was parked and left her after warning her not to tell anyone or he would have a friend of his "come after" her.

The victim drove immediately to the Pekin Hospital arriving about 5:30 a.m. on October 29, clad in only a sweater. Testimony by the nurses indicated the victim was apprehensive and frightened as she reported to the nurses at the emergency entrance that she had been raped. A nurse testified that when the victim was admitted to the emergency room she detected no odor of intoxicating beverages. Medical examination revealed spermatozoa was found in her vagina. Police found, shortly after Hess told of the rape, defendant's T-shirt in the victim's car, and her clothes and purse were found on a country road near a white fence.

Defendant admitted meeting the victim at the bar and driving around with her in her car. To explain the presence of his shirt found in the victim's car, defendant admitted he took off both of his shirts because he was to be in a fight up in Creve Coeur. Defendant said he could remember nothing from that point until he arrived at his truck and did not know if he had sex with the victim.

Witnesses testified that the complainant's reputation for chastity and morality was not good.

Defendant contends his convictions should be reversed because the complainant's testimony was neither clear and convincing nor substantially corroborated. Defendant notes the failure of the victim to remember numerous details of the night in question, including the weather conditions, how many drinks she had, what time she met defendant, what country roads he took her on, how many times he slapped her and when she undressed.

Minor variances which may occur in the testimony constitute mere discrepancies affecting only credibility, and the responsibility for weighing falls to the trier of fact. If the discrepancies do not detract from the reasonableness of the victim's story as a whole, her testimony may be found clear and convincing. If the victim's testimony is not clear and convincing, it must be corroborated, and a prompt complaint is sufficient corroboration. See *People v. Graham* (1978), 60 Ill. App. 3d 1034, 1045, 377 N.E.2d 179, 186-87.

In reply to defendant's contention that the complainant's testimony was not corroborated, the State claims any discrepancies in the victim's testimony were minor and argues that a failure to remember such details is to be expected considering the victim's terrible experience and the 5-month delay between the incident and the trial. The State also contends the victim's testimony was corroborated by the discovery of defendant's shirt in her car, the discovery of the victim's clothes where she said she had dropped them, her prompt visit to the hospital in a frightened state, and the presence of spermatoza in her vagina.

Defendant's contention that there was little, if any, evidence of the victim's resistance to the defendant's advances is refuted by the victim's testimony that defendant slapped her several times, forced her to perform the deviate act by pulling her hair, grabbed her to prevent escape, and upon leaving her car threatened her with harm if she told anyone about the incident. Conversely, defendant admitted that he could remember only certain events, including his driving of the victim's car away from the tavern and the victim's removal of her blouse, but that his memory then went blank until he arrived in Pekin where he had left his pickup truck. Defendant admitted in a written statement "I know this sounds stupid, but not knowing about having sex with her, but I don't remember."

■■ In a trial for rape or deviate sexual assault where the defendant denies the charge, the complainant's testimony must either be clear and convincing or corroborated by other evidence. (*People v. Hendon* (1975), 33 Ill. App. 3d 745, 749, 338 N.E.2d 472, 475; *People v. O'Brien* (1979), 74 Ill. App. 3d 256, 392 N.E.2d 967.) In such cases, it is primarily the function of the trier of fact to judge the credibility of the witnesses and

the weight of the evidence (*People v. O'Brien; People v. Secret* (1978), 72 Ill. 2d 371, 376, 381 N.E.2d 285, 288), and "[a] court of review will not set aside a finding of guilty unless the evidence is so palpably contrary to the finding or so unreasonable, improbable or unsatisfactory as to cause reasonable doubt as to the guilt of the accused." (*People v. Reese* (1973), 54 Ill. 2d 51, 58, 294 N.E.2d 288, 291.) The jury in rendering a guilty verdict here could have felt defendant's lapse of memory about what happened in the car was too convenient to be believed.

■ Next, the defendant contends he should be granted a new trial because the jury, after it returned to deliberate, did not remain under the constant supervision of sworn officers of the court. Section 115-4(1) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 115—4(1)) provides:

> "When the jury retires to consider its verdict *an officer of the court shall be appointed* to keep them together and to prevent conversation between the jurors and others." (Emphasis added.)

In the instant case the jurors were driven to and from their hotel by deputy sheriffs and were supervised at times during their deliberations by unsworn bailiffs. Defendant moved for a new trial, citing *People v. Tilley* (1950), 406 Ill. 398, 94 N.E.2d 328, where the court held that the failure to keep the jury under the supervision of sworn officers, plus other errors, required a reversal of the defendant's conviction. We believe *Tilley* is not apposite. First, defendant has not indicated how he was prejudiced by the jury's supervision by unsworn personnel. All of the unsworn bailiffs denied that any jurors were tampered with while they were in their custody. Second, the statute in effect at the time of *Tilley* required supervision by "sworn" officers of the court, while the current statute merely designates "an officer of the court." Third, in the case at bar defendant was advised in advance that the jury would be driven by sheriff's deputies and made no objection to the arrangement. In *Tilley*, bailiffs were sworn to supervise the jury overnight, but due to the scarcity of accommodations, five of the jurors were boarded overnight at the home of a deputy sheriff who had not been sworn to attend the jury, and no bailiffs stayed with them. On appeal, the supreme court reviewed a number of alleged trial errors and held that "[t]he *cumulative* effect of the errors discussed is to leave an abiding conviction that defendant was not afforded the fair and impartial trial guaranteed him by law, * * * ." (Emphasis added.) 406 Ill. 2d 398, 414, 94 N.E.3d 328, 337.

■ We believe the controlling rule is that set out in *People v. Hanson* (1964), 31 Ill. 2d 31, 41-42, 198 N.E.2d 815, 820:

> " 'Where the separation [of the jury was] by inadvertence or carelessness of the jurors or of the officer, or of both, the verdict

will not be set aside unless it is clearly shown the jurors were operated on in some way to the prejudice of the prisoner.' "

*Hanson* was cited in *People v. Martinez* (1977), 45 Ill. App. 3d 939, 360 N.E.2d 495, where a separation of jury resulted when deputy sheriffs allowed jurors to move their cars into guarded parking lot when they returned from dinner. The court held that the verdict would not be set aside unless it is clearly shown that jurors were operated on in some way to the prejudice of the defendant. The determination of whether the defendant has been prejudiced is left to the sound discretion of the trial court, based on the facts and circumstances in each case and the nature of the prejudicial material. See *People v. Zamarano* (1974), 16 App. 3d 807, 306 N.E.2d 902.

Defendant's final contention, that his sentences were excessive, is not persuasive. Considering defendant's use of violence and his prior battery conviction, we do not believe the court abused its sentencing discretion. In *People v. Peoples* (1979), 71 Ill. App. 3d 842, 390 N.E.2d 554, we rejected the defendant's argument that the trial court did not properly allow the defendant to elect between the old and new sentencing acts.

As the supreme court has observed previously, the purpose of review in a criminal case is not to determine whether the record is perfect but rather to determine whether the defendant has had a fair trial under the law and whether his conviction is based upon evidence establishing his guilt beyond a reasonable doubt. *People v. Ward* (1965), 32 Ill. 2d 253, 204 N.E.2d 741.

After considering the record and matters argued in this court, we conclude that defendant had a fair trial, free from prejudicial error.

The judgment of the Circuit Court of Tazewell County is affirmed.

Judgment affirmed.

STOUDER, P. J., and ALLOY, J., concur.